RODDY v. THE MISSOURI PACIFIC RAILWAY COMPANY,
*Appellant.*

DIVISION TWO.

1. **Actionable Negligence, What Constitutes.** Actionable negligence consists in the breach or non-performance of some duty which the party charged with the negligent act or omission owed to the one suffering loss or damage thereby.

2. ———: CONTRACT: THIRD PERSON. A third person cannot maintain an action for injuries resulting from a breach of contract arising purely out of the terms of the agreement between the contracting parties.

3. **Negligence**: BREACH OF CONTRACT: INJURY TO THIRD PERSON. Although the contract under which a railway company furnishes to a quarry owner, on his own sidetrack, cars for the transportation of stone, requires it to see that the cars are provided with proper brakes, it is not liable to a servant of such quarry owner who is not a party to the contract and over whom it has no control, for injuries resulting from the company's breach of its contract with the quarry owner.

4. ——— : ——— : LIABILITY TO THIRD PERSONS. Such contract, however, being for the mutual benefit of the quarry owner and the railroad company, the latter in furnishing the cars, which was a matter devolving exclusively on it, was bound to use ordinary care to furnish such as were reasonably safe for the quarry owner and his servants.

5. ——— : INDEPENDENT CONTRACTOR. An employer is not responsible for the negligence of a contractor or his servants where such contractor is given entire freedom in the use of means to accomplish the result.

6. ——— : ———. Where the employer, however, reserves the right to direct the manner of performance in any particular, or where he undertakes to provide any of the instrumentalities, he owes to the contractor and his employes the exercise of care in that regard.

7. ———. A car with defective brakes is not such an imminently dangerous instrument as to render the railroad company liable to one injured thereby in the absence of any contractual or other relationship.

8. ——— : QUESTION FOR JURY. Where on the issue of contributory negligence fair-minded and sensible men may differ in their conclusions, the question is one for the jury and this is true although there is no dispute as to the facts.

9. Contributory Negligence : DEFECTIVE CAR. Where one to whom a railroad company owes the exercise of due care is furnished with a car having a defective brake and is injured thereby, he cannot recover for such injury, if he knew that defective and dangerous cars were frequently left by the company for his use and could have ascertained by reasonable care on his part the defect in the car causing the injury.

10. ——— : QUESTION FOR JURY. Whether the plaintiff was guilty of contributory negligence in not exercising reasonable care to ascertain the condition of the car was a question for the jury.

*Appeal from Johnson Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

REVERSED AND REMANDED.

*Adams & Buckner* for appellant.

(1) The court erred in refusing to give the defendant's instruction at the close of the evidence, that the plaintiff could not recover. *Banking Co. v. O'Hara,*

46 Ga. 417; *Bendict v. Chandler*, 26 Ohio St. 393; *Maguire v. Magee*, 13 Atl. Rep. 551; *Heaven v. Pender*, 9 Q. B. Div. 303; *Winterbottom v. Wright*, 10 Mees. & W. 109; *Kahl v. Love*, 8 Vroom (N. J. L.) 5–37; *Collis v. Selden*, 3 L. R. C. P. C. 495; *Burke v. Refining Co.*, 18 N. Y. 354 (11 Hun.); *King v. Railroad*, 66 N. Y. 181; *Norton v. Weswell*, 26 Barb. 618; *Bank v. Ward*, 100 U. S. 195; *Loose v. Clute*, 51 N. Y. 494; *Safe Co. v. Ward*, 46 N. J. L. 19; *Nicker v. Harvey*, 49 Mich. 517: *Murray v. Railroad*, 11 Col. 124; *Railroad v. McLaughlin*, 47 Ill. 265; *Hallihan v. Railroad*, 71 Mo. 116; *Gordon v. Livingston*, 12 Mo. App. 267; *Kinealy v. Railroad*, 69 Mo. 666; *Mann v. Railroad*, 86 Mo. 350; *Speed v. Railroad*, 71 Mo. 308. (2) The injury which plaintiff suffered was not proximate to the wrong attributable to the defendant. A voluntary action intervened between the act charged and the injury. The defendant placed the car on its main track; it was thence moved to Pickle's switch by himself or servants and placed on a grade, and from thence put in motion. *Henry v. Railroad*, 76 Mo. 288; *Searle v. Railroad*, 65 Texas, 274; *Lewis v. Railroad*, 54 Mich. 55; *Proctor v. Janings*, 6 Nevada, 424; *Doggett v. Railroad*, 78 N. C. 305; *Wood v. Railroad*, 49 Mich. 370; *Pierson v. Duane*, 4 Wall. 605; *Frances v. Transfer Co.*, 5 Mo. App. 7; *Kisler v. City*, 100 Ind. 210; *Car Co. v. Barker*, 4 Colo. 344; *Scheffer v. Railroad*, 105 U. S. 249; *Cuff Ad. v. Railroad*, 35 N. J. (6 Vroom) 32. (3) The plaintiff's own negligence contributed to the injury of which he complains. (4) The petition fails to state facts sufficient to constitute a cause of action; therefore, the court erred in overruling the defendant's objection to the introduction of any evidence under it and its motion in arrest. (5) The court erred in giving the plaintiff's first instruction, numbered 1. Authorities, *supra; Gunly v. Railroad*, 93 Mo. 450; *Brown v. Ins. Co.*, 86 Mo. 51; *Anderson v. McPike*, 86 Mo. 293; *State v. Chambers*, 87 Mo. 404;

*Sykes v. Bollman*, 85 Mo. 35. (6) The defendant's second and fourth instructions should not have been given. In them the jury are told that the plaintiff had a right to presume that defendant had done its duty and that the appliances to said car were in such state of repair and condition as to be safely managed and controlled. This was error; there was no duty which the defendant owed to plaintiff by contract, and none by law, except not to wilfully injure him. Authorities, *supra*. (7) The damages are excessive.

*Samuel P. Sparks* for respondent.

(1) The railway company owed Roddy as the servant of Pickle, its contractee, a legal duty to furnish cars with which to perform his master's work in safety. *Iron Co. v. Erickson*, 39 Mich. 492; Wood on Master & Serv., pp. 910–921, note; *Heaven v. Pender* (1883), 49 L. T. R. N. S. 357; *Easton v. Railroad*, 65 Tex. 577; *Carroll v. Railroad*, 13 Minn. 30; *Horner v. Nicholson*, 56 Mo. 220; *Wright v. Railroad*, 1 Law Rep., Q. B. Div. 252; *Holmes v. Railroad*, Law Rep. 4 Exch. 254; affirmed, 6 Law Rep. Exch. 123; Shearm. & Red. on Neg. [3 Ed.] sec. 54a, p. 69. A legal privity exists between one contracting party and the servants of the other when they are exposed to risks arising from some duty or obligation by reason of the contractual relation. *Iron Co. v. Erickson*, 39 Mich. 492; Whittaker's Smith on Neg. [1 Am. Ed.] p. 2; *Abraham v. Reynolds*, 5 H. & N. 141. (2) *First.* Negligence in law is a breach of duty unintentionally and proximately producing injury to another possessing equal rights. Whittaker's Smith on Neg., ch. 1, p. 1; Cooley on Torts [Ed. 1880] p. 659, ch. 20; *Railroad v. Jones*, 95 U. S. 441; Thomp. Neg., preface. *Second.* Actionable negligence consists in the failure to exercise ordinary care or skill towards a person to whom the defendant owes the duty of observing ordinary care, by which

failure the plaintiff, without contributory negligence on his part, has suffered injury to his person or property. *Heaven v. Pender, supra ;* Bishop, Non. Cont. Law, sec. 436, and note. *Third.* But privity of contract is not always essential to create a liability in the case ; it may arise as well out of the relative situation of the parties. *Stewart v. College,* 12 Allen ( Mass.) 58 ; Wood, Master & Serv., p. 912 ; *Lancaster v. Ins. Co.,* 92 Mo. 460 ; Whittaker's Smith on Neg., p. 2. ( 3 ) The injury complained of was not due to any negligence on the part of Roddy or his master in handling the car with the defective brake after it was furnished by the railway company, but was due wholly to its act in furnishing a car with a defective brake. The company could not shift its responsibility for this default onto Pickle, who was in no way responsible. *Lancaster v. Ins. Co.,* 93 Mo. 460 ; *Horner v. Nicholson,* 56 Mo. 220. ( 4 ) Notwithstanding that Roddy was on the track anp handling the property of appellant he did not become its servant thereby, nor was he merely a volunteer ; for he was engaged at the moment of the injury in expediting the work of his own master. *Abraham v. Reynolds,* 5 H. & N. 141 ; *Eason v. Railroad, supra ; Railroad v. Bolton,* 21 Am. & Eng. R. R. Cases ( Ohio ), 501 ; *Holmes v. Railroad,* L. R. 4 Exch. 254 ; 2 Thomp. Neg., sec. 42, p. 1045. ( 5 ) The proof was abundant and uncontradicted that the company had been warned of its negligence on former occasions in furnishing cars with brakes out of repair and without any brakes, and that no heed was given to these monitions. Pierce on Railroads, pp. 373–382 ; Shearm. & Red. Neg., sec. 99 ; 21 Am. & Eng. R. R. Cases, p. 640. ( 6 ) It was not only the duty of the railway company, but it assumed by its contract with Roddy's master, to furnish cars with safe and whole brakes, and the second instruction of plaintiff correctly stated the law in this regard. *Hanna v. Railroad,* 12 S. W. Rep. 719. ( 7 ) Appellant's second point that the injury to Roddy was

not proximate to the wrong attributed to the defendant because a voluntary action, the moving of the car down to the derrick had intervened, finds no support either in the law or the facts in the record of this case, and is not deserving to be dignified by even a passing consideration. *Jucher v. Railroad,* 52 Wis. 150; *Campbell v. City,* 31 Minn. 308; *Railroad v. Dorsey,* 25 Am. & Eng. R. R. Cases (Tex.) 446. (8) This case is clearly distinguishable from that class of actions brought against the owner of premises by an employe of an independent contractor for erections or improvements on the premises with the owner where from the terms of the contract he owes no duty to the employes of the contractor, of which the cases cited under the first proposition of appellant's brief are types. (9) The question of contributory negligence is usually one of fact to be submitted to a jury. *Smith v. Railroad,* 61 Mo. 588; *Longan v. Railroad,* 72 Mo. 392. (10) An employe has a right to assume that the master has done his duty in supplying suitable and safe machinery. *Parsons v. Railroad,* 94 Mo. 286. (11) Where a servant of one company uses the track of another consenting thereto, that company will be held liable for negligence in keeping it in repair as much as it would be for that of its own employe. *Sellars v. Railroad,* 25 Am. & Eng. R. R. Cases, 451. (12) A railroad company permitting another company to use its track is liable to an employe of the latter for damages caused by a failure to keep the track repaired. *Smith v. Railroad,* 19 N. Y. 127; *Sawyer v. Railroad,* 33 Am. & Eng. R. R. Cases (Minn.) 394; *Railroad v. Kilrain,* 4 S. E. Rep. 165. (13) Questions of sufficiency of machinery, employe's ignorance of its dangerous character, failure to inform himself of fact, are all matters within the province of the jury. *McDade v. Railroad,* 26 Am. & Eng. R. R. Cases, 315.

MACFARLANE, J.—This is an action for damages on account of serious personal injuries received by

plaintiff by reason of alleged negligence on the part of defendant in furnishing a defective car which plaintiff was required to handle.

The petition charges and the evidence shows, that the main line of defendant's road, between St. Louis and Kansas City, passes through the town of Warrensburg, in Johnson county. That about three miles northwest of the town of Warrensburg are extensive stone quarries, owned and operated by one Pickle. Defendant owns and operates a branch railroad running out from Warrensburg to these quarries, which is used for transporting the stone taken from the quarries. From this branch road, at a point near the quarry, was a switch which connected the road with another railroad track, running into the quarry. This latter track was owned by Pickle, and was used for loading stone upon the cars. Cars intended for transportation of coal were brought out on this branch road and were left standing on this quarry track, or convenient thereto, by defendant, and were then handled by Pickle until loaded, when they were carried out by defendant.

Plaintiff at the time of his injury was in the employ of Pickle, working in the quarry, and had been so employed for about thirteen years. At the time of his injury a part of his duty was to load stone into the cars by means of a derrick erected near the quarry and quarry track. After the empty cars had been placed on the quarry track they were managed, controlled and, when necessary, moved to proper position for loading by Pickle and the men in his employ. This duty of moving cars frequently devolved upon plaintiff. The grade to the quarry from the branch road was descending, and brakes were required to hold cars in position.

The plaintiff testified in substance that, on the eighteenth day of June, Antoine Pickle, manager of the quarry, directed him to load a car with stone. Two flat cars stood upon the quarry track, fifty or sixty feet from the derrick. He got upon the north car,

nearest the derrick, and found the brakes set. He walked on top of the cars to the back end of the south car, and, as he supposed, set the brake tight on that one. He then uncoupled the cars, let the brake off the north one, sat on the end of the other, and with his feet put the north car in motion. He then got down on the ground between the cars, and with his hands, one on the drawhead and the other on the end of the car, commenced pushing the car to the derrick. He had moved but a short distance when the south car struck him, crushing his arm and causing permanent injury. It appeared from other evidence that, while the brake, from what could be seen from the top of the car, and from what could be known from turning it, appeared to be in good condition, it was found that the rod connecting the brakes beneath the car was down, and the brake shoe was, in consequence, too low to touch the wheel, and turning the brakes in the usual way did not set the shoe against the wheel. The brake was, in that condition, wholly useless. When the first car was moved out of the way, the second was set in motion by its own weight, and followed the first on the descending grade, and struck plaintiff as stated.

The evidence showed further that the defect in this brake could have been easily detected by an examination beneath the car. Cars were frequently sent out with defective brakes. Plaintiff testified himself that "half the time they had no brakes on them." Pickle kept chains which were used in making temporary repairs of the brakes, and this one could have been easily repaired with such a chain. The superintendent of the quarry usually examined the cars and notified the employes if any were defective,

The contract between Pickle and the railroad company, if in writing, was not offered in evidence. From the testimony of Pickle, the superintendent, the arrangement between them was that defendant should furnish cars at the quarry when requested. The cars were left

on the track near the quarry, and were handled at the quarry and loaded by the men employed and paid by Pickle. Defendant had no control over Pickle's men. After the cars were loaded they were billed from the quarry to their destination, and charges for transportation were paid from the quarry. Defendant, when notified, received at the quarry and carried off the loaded cars.

Defendant's answer was a general denial, and plea of contributory negligence. Defendant offered no evidence, and asked no instructions, except in the nature of a demurrer to the evidence, which was refused.

At the request of plaintiff the court gave the jury the following instructions: "1. The court instructs the jury that if you should find and believe from all the evidence in the case that at the time of the injury complained of by plaintiff he was engaged at work in the employment of one Pickle and in his interest, and that defendant had furnished cars to said Pickle to be loaded by him with stone belonging to said Pickle for transportatation by the defendant over its road for pay, on or about the eighteenth of June, 1836 ; that of the cars so furnished by defendant there was one the brake of which needed repairing at the time the same was furnished, and for the want of such repairing was insufficient with proper use and management to fasten, manage and control said car ; and that defendant knew of the condition of the brake, or by the exercise of reasonable diligence could have known of its condition ; and that plaintiff did not know the condition of said brake until the happening of the injury complained of, and the defect in said brake was not patent to plaintiff or such as would have been disclosed to him had he been ordinarily observant ; and that plaintiff while so engaged in the service of said Pickle, loading another of defendant's cars, the car to which was fixed the brake being out of repair ran down and against plaintiff, whereby he was hurt, injured and damaged ; and that

the injury occurred without the fault or negligence of plaintiff contributing thereto, then your findings should be for plaintiff.

"2. The court instructs the jury that if you should find and believe from all the evidence in the case, that the defendant furnished cars to said Pickle to be by him loaded with stone at his quarries for transportation over its railroad, then it became, and was, the duty of the defendant to have furnished cars provided with appliances in such a state of repair as that the said Pickle and his employes could, with proper management and reasonable care and prudence, safely manage and control same while so engaged in said work. And if you should find that plaintiff, before the time of the alleged injury did not know that defendant's cars were not in such condition or repair, he had a right to presume that defendant had done its duty, and that the appliances to said car were in such state of repair and condition as to safely manage and control said cars, with proper use and management, to do the work for which such appliances were designed, and to rely and act upon such presumption."

"4. The court further instructs the jury, if you should find and believe from the evidence in the case that the plaintiff did not know of the alleged condition of the brake referred to in the testimony, until after the happening to him of the injury referred to in testimony, and that the condition of said brake would not have been observed by him by the exercise of ordinary care and reasonable prudence and observation on his part, it was not incumbent on plaintiff to search for and examine for defects in its condition not so observable, but that he had the right to assume that such brake was in a suitable and safe condition as to its being repaired that it would, with proper management, do the work for which it was designed."

The jury found for plaintiff and assessed his damages at $6,000. Defendant appealed.

I. The action is for negligence. It is charged in the petition "that it was the duty of said defendant to furnish cars to said Pick¹e properly constructed, and provided with suitable and safe brakes, properly constructed and sufficiently repaired, and in condition to manage, hold, control and stop its said cars, but plaintiff charges that the said defendant, by its carelessness and negligence failed to furnish cars so properly constructed and with suitable and safe brakes, constructed and sufficiently repaired to manage, hold and control the same."

Definitions of actionable negligence have been given in great variety of forms, by courts and text-writers, but whatever the form of simple definition, there is unanimity of expression and opinion, that it consists in the breach or non-performance of some duty which the party charged with the negligent act or omission owed to the one suffering loss or damage thereby.

BRETT, M. R., in *Heaven v. Pender*, 17 Rep. 511, defines actionable negligence " to consist in the failure to exercise ordinary care or skill towards a person to whom the defendant owes the duty of observing ordinary care, by which failure, the plaintiff, without contributory negligence on his part, has suffered injury to his person or property." This definition is cited and approved by counsel for plaintiff, and may be accepted for the purposes of this case.

The question then is, did defendant owe plaintiff the duty of using ordinary care to furnish cars in which to load stone, which were properly constructed and provided with suitable brakes? It is insisted that the duty arose either out of the contract between defendant and Pickle, or by virtue of the relationship between plaintiff and defendant, arising out of their respective duties under the contract.

Assuming that the contract between defendant and Pickle, either expressly, or by implication, imposed upon the former the duty to supply the latter with cars

provided with suitable brakes, and that there was a breach of that duty whereby plaintiff was injured, does the contract afford him indemnity for his injuries? The right of a third party to maintain an action for injuries resulting from a breach of a contract between two contracting parties, has been denied by the overwhelming weight of authority of the state and federal courts of this country and the courts of England. To hold that such actions could be maintained, would not only lead to endless complications, in following out cause and effect, but would restrict and embarrass the right to make contracts by burdening them with obligations and liabilities to others, which parties would not voluntarily assume. *Winterbottom v. Wright*, 10 Mees. & W. 109; *Burdick v. Cheadle*, 26 Ohio St. 393; *Maguire v. Magee*, 13 Atl. Rep. (Penn.) 551; *Necker v. Harvey*, 49 Mich. 518; *Savings Bank v. Ward*, 100 U. S. 195; *Deford v. State*, 30 Md. 195; *Marvin Safe Co. v. Ward*, 46 N. J. L. 19; *Sproul v. Hemmingway*, 14 Pick. 1; *Mann v. Railroad*, 86 Mo. 347; *Lampert v. Gaslight Co.*, 14 Mo. App. 376; *Gordon v. Livingston*, 12 Mo. App. 267.

The rule is put upon two grounds, either of which is unquestionably sound. One ground is given by the court in the opinion in *Winterbottom v. Wright* as follows: "If we were to hold that plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that there is no reason why we should not go fifty." The other ground is thus stated in the New Jersey case above cited: "The object of parties in inserting in their contracts specific undertakings with respect to the work to be done is to create an obligation *inter sese*. These engagements and undertakings must necessarily be subject to modifications and waiver by the contracting parties. If third persons can acquire a right in a contract, in the nature

of a duty to have it performed as contracted for, the parties will be deprived of control over their own contracts."

Plaintiff not being a party to the contract cannot maintain this action on account of injuries, resulting from any breach of duty defendant owed Pickle, arising purely out of the terms of the contract between them.

II. It is clear from the evidence that plaintiff was in no sense the servant or employe of defendant. He was employed and paid by Pickle and was subject only to his control and direction. Defendant had no authority over him; had no power to discharge him for any cause, and had no contract with him. The relation between plaintiff and defendant was not that of master and servant, and the rules of law peculiarly applicable to the duties and liabilities of one to the other have no application. Plaintiff shows no cause of action growing out of any duty defendant owed him, arising from the relationship of master and servant. Wood on Master and Servant, secs. 1, 281; *Speed v. Railroad*, 71 Mo. 308.

III. There is a class of cases in which one has been held liable to another in the absence of any contractual or other relationship between them. The rule in such cases is laid down in 2 Sutherland on Damages, page 435, as follows: "Where an act of negligence is imminently dangerous to the lives of others, the guilty party is liable to the one injured by the negligence, whether there be a contract between them violated by that negligence or not." The principle is illustrated by the case of *Thomas v. Winchester*, 6 N. Y. 397. That was a case in which a dealer in drugs had carelessly labeled a poison as harmless medicine, and sent it so labeled into the market. It was held that the dealer was liable to any person who might be injured by the use of the drug. In considering what articles can be regarded imminently dangerous, the same court in *Loop v. Litchfield*, 42 N. Y. 357, says: "They are instruments and

articles in their nature calculated to do injury to man-
kind, and are generally intended to accomplish that
purpose. They are essentially and in their elements
instruments of danger." It cannot reasonably be con-
tended that a railroad car, though supplied with defect-
ive brakes is an imminently dangerous instrument.
Unless put in motion, it is perfectly harmless, and when
in motion it is not essentially dangerous. We do not
think defendant incurred any liability to plaintiff by
the simple act of leaving a defective car upon the track.
*Railroad v. McLaughlin*, 47 Ill. 265; *Gurley v. Rail-
road*, 93 Mo. 445.

IV.   What then was the true relationship between
these parties, and what, if any, duty did defendant owe
to plaintiff as the employe of Pickle?

Defendant was engaged in the general business of a
common carrier. It operated a railroad between St.
Louis and Kansas City. Pickle was the owner of large
and valuable stone quarries, situated some distance from
defendant's road. The stone taken from these quarries
was merchantable, and was a subject of commerce. The
stone was of value only when it could be transported to
market. It thus became a matter of mutual interest
and profit to defendant and Pickle to provide means
for the transportation of this merchandise from the
quarry to points at which it could be sold. A contract
was entered into between them, by which defendant
built a branch or spur road from its main line to
the quarries, and also tracks from this spur into the
quarries. These were paid for by Pickle. In order to
facilitate the transportation of stone, which was beneficial
to both parties, it was agreed that defendant should,
when cars were needed, place them on the quarry tracks,
or conveniently near to them, and that Pickle should
move them when needed into position for loading, and
when loaded defendant should take them out, and trans-
port them to their destination. Plaintiff was employed
by Pickle, a part of his duty consisting in moving and

handling these cars. It did not appear from the evidence what, if any, compensation Pickle received for loading the cars.

The manner of conducting the business is thus detailed by Pickle, superintendent: "The Missouri Pacific railway built that track on the west side of the quarry; Pickle paid for it. The company claims it; they simply constructed it for Pickle. About shipping stone, the bill reads from Warrensburg of course, but the freight commences from the quarry. The person to whom these cars are sent pays the freight. As to rates, they allowed us a certain amount off from Warrensburg to the quarry; I believe it is $2.50 or $5. The freight is included from the quarry, not from town. We don't charter these cars to haul stone to the main line, but charter the cars to wherever the cars are consigned. We don't simply charter the cars to haul the stone from the quarry to Warrensburg. If we have orders to Warrensburg, we bill to Warrensburg. All that the railroad company had to do with the movement of these cars is simply to haul the empties out there, and when we have loaded them the engine comes out and takes them away; that is all they have to do with it. That is not the first car that they sent out there that was out of fix. I have seen as many as ten cars standing there with only two brakes on them."

Under this evidence it is clear that what was to be done by the respective parties, under the contract, was for their mutual profit, and each was a contractor with the other, to perform a particular part of the work necessary to carry out the common purpose. It is now well established that the employer of a contractor is not responsible for the negligence of the contractor, or his servants, in case the contractor is given entire freedom in the use of means to accomplish the result. Where the employer, however, reserves the right to direct the manner of the performance in any particular, or where he undertakes to provide any of the instrumentalities,

he owes to the contractor and his employes the duty of care in respect to such matters, over which he retains control, or undertakes to perform.  Whittaker's Smith on Negligence, 172-174 ; Wood on Master and Servant, sec. 337; *Stewart v. Harvard College*, 12 Allen, 58 ; *Lancaster v. Ins. Co.*, 92 Mo. 460 ; *Horner v. Nicholson*, 56 Mo. 220 ; *Devlin v. Smith*, 89 N. Y. 470 ; *Caughtry v. Woolen Co.*, 56 N. Y. 124 ; *Deford v. State*, 30 Md. 179 ; *Lake Superior Iron Co. v. Erickson*, 39 Mich. 492 ; *Smith v. Railroad*, 19 N. Y. 127 ; *Hanna v. Railroad*, 12 S. W. Rep. 718 ; *Kilian v. Railroad*, 79 Ga. 241 ; *Conlon v. Railroad*, 15 Am. & Eng. R. R. Cases, 99.

We think each of these contracting parties owed to the other, and his employes, the duty of properly discharging his part of the joint undertaking, in respect to any matter exclusively devolving upon him.  Pickle had nothing to do with selecting or providing the cars. That duty was intrusted entirely to defendant.  They were intended for the use of Pickle and his servants in discharging his part of the contract, and we think the obligation rested upon defendant to use ordinary care to provide such as would be reasonably safe for such use.

V.  The evidence does not show, conclusively, such contributory negligence on the part of the plaintiff as should, as a matter of law, preclude a recovery.  Plaintiff in testifying as a witness, it is true, admitted that one-half the cars furnished Pickle by defendant were without brakes.  On the other hand Pickle's superintendent testified that he generally examined the cars himself, and if any were found defective, he gave notice of such defects to those who handled them.  Whether under these circumstances, and the fact that the brakes appeared, from plaintiff's position on top of the car, and from his efforts to set them, to be in good condition, plaintiff used such precautions as ordinary care and prudence required of him, was a question for the jury.

It is not every case in which there is no conflict in the facts, that the court will declare, as a matter of law, the legal effect of the evidence. If, upon all the facts and circumstances, there is room for fair and sensible men to differ in their conclusions, the jury should decide. *Petty v. Railroad*, 88 Mo. 306; *Buesching v. Gaslight Co.*, 73 Mo. 219; *Reiley v. Railroad*, 94 Mo. 609; *Thorpe v. Railroad*, 89 Mo. 651; Wood's Railroad Law, 1460; Wood on Master & Servant, 761.

VI. The instruction, in directing the jury that plaintiff had the right to assume that defendant would furnish Pickle with cars properly supplied with brakes, in good repair and condition, properly declared the law as applied to the duty a master owes to his servant. But if the servant was informed by the master, or had learned by observation, or from any other source, that some of the instrumentalities furnished him were defective and dangerous, and without promise that they would be repaired, he continued in the master's service, then the risk of injury from such defective instrumentalities would become an incident to such service, which he would assume. *Price v. Railroad*, 77 Mo. 508; *Porter v. Railroad*, 71 Mo. 66; *Devitt v. Railroad*, 50 Mo. 302; *Thorpe v. Railroad*, 89 Mo. 650.

While the relation of master and servant did not exist between these parties, defendant owed to plaintiff the observance of reasonable care in the selection of its cars for his use, which is the same degree of care the master is required to observe in providing his servant with the instrumentalities for carrying on his business. No reason can be seen why, if plaintiff knew that defective and dangerous cars were frequently left for his use, he would not assume the risk of injuries from such defects as could have been ascertained by reasonable inspection on his part. While defendant may have been negligent in the discharge of the duties it owed to plaintiff, if plaintiff neglected such precautions as common prudence demanded, under all the circumstances,

he was guilty of contributory negligence, which should have defeated a recovery.

In view of the fact that plaintiff himself testified that one-half the cars were without brakes, it was not proper to instruct the jury that he had the right to rely on defendant's performance of its duty in furnishing such as were properly supplied with brakes. The knowledge plaintiff had of the common neglect of defendant imposed upon him, for his own protection and safety, the duty of reasonable care in ascertaining for himself the condition of the cars before he attempted to handle them, and a failure to do so would constitute contributory negligence on his part. Whether such care was used on the occasion of his injury should have been submitted to the jury.

For the errors mentioned, the judgment is reversed and cause remanded. All the judges of this division concur.