JAMES ROTHWELL et al., Respondents, v. THOMAS K. SKINKER, Appellant.

St. Louis Court of Appeals, April 10, 1900.

1. **Express Promise: CONTRACT: CAUSE OF ACTION.** In Missouri a person for whose benefit an express promise is made. in a valid contract between others, may maintain an action upon it in his own name.

2. ——: ——: ——: PRIVITY OF CONTRACT. In the case
at bar, under the circumstances, the law created the privity of con-
tract and implied the promise to pay, whenever the amount due
from each was ascertained according to the terms of the contract.

Appeal from the St. Louis County Circuit Court.—*Hon.
Rudolph Hirzel*, Judge.

Affirmed.

*C. R. Skinker* for appellant.

(1) Plaintiffs are not entitled to maintain this action
against defendant, Skinker, because there is no privity of
contract. Friemuth v. Rupp, 8 Mo. App. 568; Zweigardt,
v. Birdseye, 57 Mo. App. 462; Roddy v. Railway, 104 Mo.
234-244; Laidlou v. Hatch, 75 Ill. 11; Rossman v. Town-
send, 17 Wis. 95. (2) The stipulations in defendant's deed
are not expressed to be for plaintiff's benefit; hence this case
is unlike the following: Rogers v. Gosnell, 58 Mo. 589;
51 Mo. 466; Cress v. Blodgett, 64 Mo. 449; St. Louis v. Von
Phul, 133 Mo. 561. (3) Zeibig is bound to collect from
defendant, if anything is due. There is an implied obliga-
tion resting upon him in favor of plaintiffs. Hertzog v.
Hertzog, 29 Pa. St. 465; Milford v. Commonwealth, 144 Mass.
64; Sceva v. True, 53 N. H. 627; 1 Parsons on Contracts
[8 Ed.], p. 6, note 1. (4) Plaintiffs are not entitled to
maintain the action against defendant, Skinker, on the the-
ory that Zeibig was acting as his agent in making the con-
tract for construction, and that defendant is liable on it as
principal. Grant v. White, 42 Mo. 285; Einstein v. Holt,
52 Mo. 340; Smyth v. Spalding, 13 Mo. 530; Ziegler v.
Fallon, 28 Mo. App. 295. (5) Neither Zeibig nor Johnson
had power to dispense with the doing of the work on the
portion of the right of way in question. Brosnahan v.
Brewing Co., 26 Mo. App. 386; Mechem on Agency, secs.
285, 288, 710, 273; Lewis v. Slack, 27 Mo. App. 119.

Rothwell v. Skinker.

*O. J. & R. Lee Mudd* for respondents.

(1) Appellant's citations on pages 54 and 55 of his brief are good enough law upon the questions, and under the circumstances therein at issue, but are out of joint with the 900 foot sewer claimed in this case, we believe. The first batch of them upon the predication of "no privity of contract" between respondents and himself, we say are off the track, legally speaking, in the following direction: (Cases in their order of succession as cited in the brief, being indicated numerically.) (2) In the first, or 1, he puts himself affirmatively in the shoes of an unconcerned outsider, who having paid a bill of court costs, sues to recover back against parties who had jointly obligated themselves to pay them; in 2 he is an abstractor employed by one person, and then, for a negligent examination of title, is sued by a stranger to the employment contract; in 3 he assumes the status of an original carrier contractor sued for an injury received by a third person while in the employment of an independent contractor; in 4 the question of whether a company by merely promising tõ pay subcontractors for such part of work as should be done by them thereby released or guaranteed the release of, the original contractor upon nonperformance of such part; and in 5 he personates a man sued for the price of certain goods, as an agent, carrier, by his principal's employee who merely delivered the stuff to the man sued—and nothing more. The citations mainly illustrate the principle of nonliability for negligence unless the person sought to be charged "owes a duty" of care to the party complaining and not the case of a third person, beneficiary owing a debt or duty of compensation, to a second party for doing something by contract with another to the third party's use or benefit, as in the case here. (3) His third group on his brief, page 54, upon his predication of liability "to Zeibig

only," are on the same *cul de sac* trail in directions astray from the situation entirely; the first involving the incapacity of an agent to sue as a trustee of an expressed trust, unless he holds the legal title to the thing involved; in 2 the status reversed the capacity of the agent to sue in his own name, without any preclusion of the right of the principal, however, to sue or be sued on the agent's contracts in the premises; in 4 appellant seems to have, in the spirit of self-sacrifice, resigned himself to the true principle, approving the reception of even parol evidence to show the principal, or beneficiary's privity, and we thus requote Kelly v. Thuey, 102 Mo. on pages 528 and 529; and in 5 he predicates his own legal incapacity as *cestui que trust* to seek a remedy for himself upon nonperformance, a case anterior to, and aside from our statute.

BLAND, P. J.—In July, 1896, the defendant and fifteen others jointly conveyed to Frederick G. Zeibig a strip of land lying partly in the city and partly in the county of St. Louis. The strip is one hundred feet wide, and beginning at the Skinker road runs westerly to the Clayton and Forest Park Railway, then westerly to the Hanley road, distant about 3,500 feet. The conveyance was in trust for a private right of way for the use and benefit of the grantors, but to become a public highway on certain conditions, not necessary to mention here. By the conveyance, the grantors authorized Zeibig to cause the strip of land to be graded for use as a road, without unnecessary delay and on the best terms obtainable, the grade to be same as that of the Clayton & Forest Park Railway, the grantors covenanting each for himself upon demand of Zeibig to pay to Zeibig the cost of grading his portion of said strip, including such culverts as may be found necessary, together with a fair share of the engineering and other expenses incident to said work, all to be com-

puted and apportioned among the several grantors in proportion to the frontage of each on said highway, such computation and apportionment to be made by Zeibig or his engineer. On the first day of March, 1897, Zeibig made a contract with the plaintiffs, whereby plaintiffs agreed to grade and do the work upon and for a boulevard one hundred feet wide between the Skinker road and the Hanley road (being the above described strip), in accordance with and as set out and stated in certain specifications thereto attached and marked Exhibit A, which specifications are expressly made a part of the contract, Zeibig agreeing to collect from the grantors of the strip and pay over to plaintiffs on monthly estimates of the work, to be made by the engineer, except twenty per cent, which was to be held back until the road was completed. Under the contract it is expressly provided that Zeibig contracts as the trustee of the grantors of the highway, and that in no event, nor on any contingency is he to become personally liable for any part of the price of the work. Relative to the matter in controversy the specifications read as follows:

"The center line of the boulevard shall begin at a point in the west line of the Skinker road, sixty feet south of the north line of the property of Thomas K. Skinker, and continue westwardly and parallel to said Skinker's north line until it intersects the center line of Clayton & Forest Park Electric Road right of way; thence along said center line of right of way to the Hanley road."

"Culverts to be extended per linear foot complete. Pipe culverts per linear foot placed. Culverts to be extended shall conform in kind and quality of material to those now in use at same places. Masonry shall be of large stones laid in horizontal beds with vertical points, but the courses need not be continuous. The backing shall consist of broken range, rubble masonry, of superior quality, well bonded and leveled; at least one-fourth of the area of the face of the walls shall

consist of headers; no joint in face of wall shall be open more than three-quarters of an inch at any point. The whole shall be laid in good native cement mortar composed of one part cement to two parts of clean, sharp sand. Work to be commenced within ten days from the signing of contract and completed on or before August 1, 1897."

The strip takes in the right of way of the Clayton & Forest Park Electric Railway. On the north of this railway right of way, Skinker owned a strip of land fifteen feet wide, which is included in the grant of the 100 feet right of way for the boulevard over his lands. There is a drain or dry branch running down through this northern strip. During the progress of the work the engineer and contractors were about to cut a ditch on the outside of the 100 foot strip on Skinker's lands so as to throw the drainage on his other lands. Skinker objected to this, whereupon he, Zeibig, the engineer and the contractors met and it was agreed that a conduit or sewer should be laid inside the limits of the 100 foot road way for a distance of 380 feet of sufficient capacity to carry the water and thus throw the drainage into the branch or ditch north of the railroad track. This was accordingly done, for which the plaintiffs were allowed by Zeibig extra pay. The engineer, B. E. Johnson and both plaintiffs testified, that when this arrangement was made Johnson had defendant to designate where he wanted the sewer started and where he wanted it to end, and staked it off as he wanted it, and defendant said that he did not want the sewer to go any further down the ravine than he had designated. Both Zeibig and defendant deny that defendant stated on the occasion that he did not want the sewer to go any further, and state that neither of the plaintiffs were present. Johnson testified, and so did plaintiffs, that when the plaintiffs were looking over the ground with a view of making a bid for the work Johnson told them that no grading would be done on the north side of

the electric railway, and that the drain there was not included in the grading required. Johnson also testified that the defendant before the bids were made, told him that the strip north of the electric road was not to be included in the grading. The road was graded according to the requirements of the engineer, leaving out the 830 feet north of the electric road, which formed the bed of the branch. In this condition the road was accepted by the engineer, the balance due the contractors therefore ascertained, and the amount apportioned to the beneficiaries or grantors in accordance with the provisions of their agreement. To Skinker was apportioned the payment of $1,632.20, which he refused to pay. After repeated demands made by Zeibig on Skinker to pay and his refusal, and after the refusal of Zeibig to sue, plaintiff brought this suit.

The defense made by Skinker is, that under the contract the plaintiffs were bound to grade the road one hundred feet wide for the entire distance; that they are bound to build a conduit, which the evidence shows would have to be at least seven feet in diameter over the branch or drain for the whole 830 feet and cover it up and grade it even with the grade of the electric road. This contention finds no support in the specifications, which particularized what the plaintiffs were required to do. They were to build necessary culverts and to extend existing culverts where necessary. The culverts provided for are transverse drains or water-ways, not lateral conduits, aqueducts or sewers as the ordinary acceptation of the word culvert is a transverse water-way—Webster's dictionary. For the construction of the latter the specifications do not call, and the defendant must look elsewhere than to the specifications to find support for his contention. For this support he turns to the contract, which contains this clause: "That the said parties of the first part, for the consideration hereinafter stated, agree to grade and do the work

upon and for a boulevard one hundred feet wide between the Skinker road and the Hanley road." If the sentence ended here it would furnish a hook upon which defendant might hang his contention, but this clause is immediately followed by the following one, to wit: "In accordance with and as set out and stated in certain specifications hereto attached." So that it is to the specifications we are directed for the information as to the kind, quantity and quality of the work plaintiffs were required to do under their contract, and we find there no provision for a sewer or other lateral drainage-way to be built of stone or brick, as it is conceded would have to be done if the fifteen foot strip north of the electric railroad is to be graded. On this branch of the case the instructions given by the learned circuit judge are in accord with this interpretation of the contract, and are approved.

Appellant contends that the plaintiffs have no right of action against him; that as between himself and the plaintiffs there is no privity of contract. The contract made by plaintiffs with Zeibig for grading the road shows upon its face that it was made for the benefit of Skinker and the fifteen others who had granted the lands for a private road. Zeibig is therefore, as to this contract, a trustee of an express trust within the letter of the statute (section 541, R. S. 1899).

In Ellis v. Harrison, 104 Mo. loc. cit. 276, it is said: "In Missouri a person, for whose benefit an express promise is made, in a valid contract between others, may maintain an action upon it in his own name. Meyer v. Lowell (1869), 44 Mo. 328; Rogers v. Gosnell (1873), 51 Mo. 466; Fitzgerald v. Barker (1879), 70 Mo. 685; s. c. (1884), 85 Mo. 14. This proposition is now too firmly settled as a part of the law of this state to require re-examination." In the same case it is said that section 540, Revised Statutes 1899, which requires that every action should be prosecuted in the name of the real

party in interest, and section 541, *supra,* should be construed together. In Howsmon v. Trenton Water Company, 119 Mo. loc. cit. 208, the doctrine of the Ellis case is approved. Under these decisions it is beyond question that the grantors, who were the beneficiaries in the contract made by Zeibig as their trustee with plaintiff, could prosecute a suit against the plaintiffs for breach of their contract to grade the road. The converse of this proposition is bound to be true, that plaintiffs may sue them, or any one of them, as the beneficiaries or beneficiary of that contract for a breach of that part of the contract which he or they by their agent or trustee agreed to perform, i. e., to pay the contract price for the work. In such circumstances the law creates the privity of contract and implies the promise to pay, whenever the amount due from each was ascertained according to the terms of the contract. Kansas City Sewer Pipe Co. v. Thompson, 120 Mo. loc. cit. 224. The grantors duly authorized Zeibig to make the contract he did make. Whether we say he made it as their trustee or as their agent, is immaterial; he was acting for them and contracted for their benefit, and when the contract was signed and delivered there was then a mutuality of contract between them and the plaintiffs, and each had the right to hold the other to the performance of the contract. Rogers v. Galloway Female College, 39 L. R. A. The cases of Roddy v. Railway Company, 104 Mo. 234; Draper v. Farris, 56 Mo. App. 417, and other cases of like character holding there was no mutuality of contract under the facts as developed in those cases, are entirely dissimilar in their facts from the case at bar, and are inapplicable to the facts we have before us. The case of Kelly v. Thuey, 102 Mo. 522, cited and relied on by appellant was expressly overruled on second appeal, 143 Mo. loc. cit. 438.

Objections were made and exceptions saved by appellant to the admission of testimony bearing upon the understand-

ing of the parties as to what work was understood by them to be included in the contract.    This testimony was immaterial, as the contract and specifications show on their face that the work demanded by appellant is not provided for.

Discovering no prejudicial error in the record, and holding that plaintiffs are entitled to prosecute their suit, we affirm the judgment.    Judge *Bond* concurs; Judge *Biggs* absent.