UNION STOCK YARDS CO. v. HOVEN-
CAMP et al.†

(Court of Civil Appeals of Texas. San Antonio. Jan. 31, 1912. Rehearing Denied Feb. 28, 1912.)

1. PLEADING (§ 34*) — CONSTRUCTION — PRESUMPTIONS.

Where a petition, in an action for injury to stock consigned to the shippers in care of a commission company, alleged negligence, in that the defendants did not notify the shippers of the arrival of the stock, but failed to allege facts which would make it the defendants' duty to give such notice, it was barely saved from a general demurrer by the rule that every reasonable intendment will be indulged in favor of a pleading in passing upon a general demurrer to it.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 66–75; Dec. Dig. § 34.*]

2. CARRIERS (§ 212*) — CARRIAGE OF LIVE STOCK—LIABILITY FOR INJURY—NOTICE OF ARRIVAL.

Where certain bulls, which were consigned over a railroad to their owners in care of a commission company, died soon after their arrival at the yards of a stockyards company, probably as a result of the poor condition in which they arrived, and where the stockyards company rented pens to the commission company, but performed no service in respect to stock received, other than to assist the commission company under its orders, the stockyards company, in the absence of contract relations with the owners, was not liable, though it did not notify the owners or their agent, the commission company, of the arrival of the bulls.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 918, 919; Dec. Dig. § 212.*]

3. CARRIERS (§ 229*) — CARRIAGE OF LIVE STOCK—INJURY TO SHIPMENT—MEASURE OF DAMAGES.

In an action against a carrier and a stockyards company for injury to cattle, which died soon after receipt by the stockyards company, the measure of the owner's damages as against the stockyards company is not the difference between their sound market value at their destination at the time of delivery and their market value as actually delivered to the owner, but the difference between their market value as delivered to the stockyards company and their market value as actually delivered to the owner.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

Appeal from District Court, Bexar County; Edward Dwyer, Judge.

Action by M. W. Hovencamp and others against the Union Stock Yards Company and another. From a judgment for plaintiffs against the stockyards company alone, it appeals. Affirmed in part, and reversed in part.

Webb & Goeth, for appellant. Taliaferro & Cunningham, for appellees.

FLY, J. This suit was brought by Hovencamp & Co. against appellant and the Missouri, Kansas & Texas Railway Company to recover damages for the loss of six bulls of the value of $950 and $1,000 for injury to the reputation of 22 bulls with whom the deceased bulls were in company at the date of their death. It was alleged that the bulls were shipped by Hovencamp & Co. from Ft. Worth to San Antonio, and consigned to the shippers in care of the Saunders Commission Company. The grounds of negligence were, so far as appellant is concerned, that when the stock were unloaded it was the duty of appellant to notify the plaintiffs or their agents, Saunders Commission Company, of the arrival of the bulls, which it wholly failed to do, "but negligently, and carelessly, and without any regard whatever of the preservation of the said bulls, or the duty of said defendants to these plaintiffs, placed said bulls in open and unprotected pens, exposed to the heat of the sun." The jury returned a verdict in favor of Hovencamp & Co., who, as the railway company has been made a formal party merely on this appeal, will be styled appellees in the further course of this opinion, as against appellant for $675, and against appellees as to the railway company.

[1] The petition fails to indicate how the duty to notify appellees of the arrival of the bulls rested upon appellant, and does not indicate in any manner how appellant became connected with the cattle, except that it may be inferred that they were delivered to appellant by the railway company, from the allegation that appellant placed the cattle in unprotected pens, and that having received them that some duty to appellees thereby arose. The only thing that could save the petition from being attacked through the medium of a general demurrer is that kindly rule that provides that every reasonable intendment will be indulged in favor of a pleading in passing upon a general demurrer to it. The rule is, however, stretched to its broadest limit in this in-

---

stance in sustaining the action of the court in overruling the general demurrer. There was no statutory duty resting on appellant to give such notice, and the circumstances which would place such duty upon appellant should have been clearly alleged, so as to give appellant some notice of what testimony it would be called upon to meet.

[2] The undisputed evidence in this case showed that the Saunders Commission Company, the agent of appellees, had rented certain pens from appellant, in which were placed cattle consigned to the company, the arrangement being that appellant would furnish the hands to receive, handle, feed, and care for the cattle, and they were to act under the orders of the commission company, and were so acting in receiving and caring for the bulls belonging to appellees. Saunders, testifying for appellees, swore: "Cattle that come into those yards consigned to me are fed and watered at my expense. I handle what is shipped in there, and they are under my charge and control, and taken care of at my expense. The regular rule is that when stock comes in there they are unloaded and put in pens and fed two bales of hay, and if you want any other order we give instructions. It is done at my expense, because I have ordered it, and I pay for it. They have got general instructions as to what shall be done with cattle there that are consigned to me." He testified, also, that every shed was filled with cattle on the morning the bulls were received, and that he had been notified by appellees that they would be shipped from Ft. Worth on May 3d, and he was expecting them. It was shown that the bulls were unloaded, placed in the pens, and watered and fed, just as Saunders had instructed, and the employés had no authority to take cattle from the sheds that had been put there by the orders of Saunders, and put the bulls in their places. All the sheds were full when the bulls arrived. The proof showed that too many bulls had been put in the car, and that they were in very bad condition when they arrived and probably died from that cause. The bulls were located exactly according to the instructions of the commission company. There was no testimony tending to show that appellant owed the duty to appellees to notify their agent that the cattle had come. The agent was notified in about four hours after the bulls arrived, and the proof rendered it improbable that the heat of the pens killed the bulls; for they were in an overheated condition when they arrived, before sunrise, and there was testimony tending to show that the bulls could fare better in the open pen than in a shed. Appellant had no authority over cattle consigned to commission men who had rented space, and never gave instructions as to what should be done with cattle. The evidence fails to indi-

cate that appellant owed any duty to appellees, or that it had any relation to or connection with appellees.

[3] The petition claimed damages on account of the loss of six bulls of the value of $950; but the court gave the following charge on the measure of damages: "If you find for the plaintiffs, the measure of damages will be the difference between the market value of the bulls in San Antonio on May 5, 1906, if they had been delivered to plaintiffs uninjured, and the market value in the condition they were in when delivered to plaintiffs, not to exceed, however, the sum of $950, which is the amount claimed by plaintiffs in their petition, with interest from May 5, 1906, to date, at the rate of 6 per cent. per annum." The charge is erroneous. The measure of damages was the market value of the bulls in San Antonio.

We need not consider the other assignments, because the evidence fails to show that appellant was liable for the damages, but that it performed every duty incumbent upon it. If appellant owed any duty to appellees, it must have arisen from the contract with the commission company; and the evidence fails to show any breach of that contract by appellant. It had done all it had contracted to do. We do not intimate that a breach of the contract made by appellant with the commission company could form the basis for a claim for damages by a third party; for there is ample authority to the contrary. Roddy v. Railway, 104 Mo. 234, 15 S. W. 1112, 12 L. R. A. 746, 24 Am. St. Rep. 333; Maguire v. Magee (Pa.) 13 Atl. 551; Necker v. Harvey, 49 Mich. 517, 14 N. W. 503.

The judgment will be affirmed as to the Missouri, Kansas & Texas Railway Company, but will be reversed as to the Union Stock Yards, and judgment here rendered that M. W. Hovencamp & Co. take nothing by their suit and pay all costs in this behalf incurred in this court, as well as the lower court.

COBBS, J., did not sit in this case.