[No. 20345.   Department One.   April 22, 1927.]

PETER HANSON, *Appellant,* v. BLACKWELL MOTOR COMPANY, *Respondent.*

IDA OLSEN, *Appellant,* v. BLACKWELL MOTOR COMPANY, *Respondent.*[1]

[1] CONTRACTS (79, 80)—PRIVITY—RIGHTS OF THIRD PERSONS.   A garage owner's breach of contract to repair the steering wheel of an automobile, does not give any right of action in favor of third persons, not parties to the contract, who were injured while riding as guests of the owner of the car.

[2] COSTS (41)—ATTORNEYS FEES—ON DISMISSAL.   Although two cases were consolidated for trial, the statutory attorneys' fees of $15 was properly taxed in each case on dismissal of the actions.

Appeal from a judgment of the superior court for Spokane county, Witt, J., entered July 27, 1926, in favor of the defendant, upon sustaining a motion for judgment on the pleadings upon the opening statement of counsel for plaintiffs, in consolidated actions for personal injuries. Affirmed.

[1]Reported in 255 Pac. 939.

*M. E. Mack,* for appellants.

*McCarthy, Edge & Lantz,* for respondent.

MAIN, J.—These two actions were consolidated in the superior court for the purpose of trial. Each was brought to recover damages for personal injuries. When the cases came on for trial and at the conclusion of the opening statement for the plaintiffs, the defendant moved for judgment. This motion was sustained and separate judgments entered dismissing the actions. The plaintiffs appeal.

The facts may be summarized as follows: On August 7, 1924, one Gus Pearson was the owner of a Reo automobile. The respondent, the Blackwell Motor Company, a corporation, operated a garage in which it did repair work. Pearson, on the day mentioned, took his automobile to the respondent's garage, stating that the steering gear was out of repair, and requested the company to repair it, and the superintendent thereof agreed to do so. He further stated that he would leave the next day for Soap Lake, Washington. On the evening of this day, Pearson called for his automobile and was told that the steering gear had been repaired as he requested. The next morning, he left for Soap Lake and the appellants accompanied him as his guests. When about seventy miles from Spokane, the automobile, because of the defective steering gear, failed to keep the road, turned over and the appellants were injured.

[1] The question is whether the respondent owed a duty to the appellants, who were not parties to the contract to repair the steering gear, which arises independent of its breach of contract. The general rule, as stated in § 116, Shearman & Redfield on the Law of Negligence (6th ed.), vol. 1, is as follows:

"Negligence which consists merely in the breach of a contract will not afford ground for an action by any one, except a party to the contract, or a person for whose benefit the contract was avowedly made. . . . But where, in omitting to perform a contract, in whole or in part, one also omits to use ordinary care to avoid injury to third persons, who, as he could with a slight degree of care foresee, would be exposed to risk by his negligence, he should be held liable to such persons for injuries which are the proximate result of such omission. As admirably put by Mr. Horace Smith: 'The true question always is: Has the defendant committed a breach of duty, apart from contract? If he has only committed a breach of contract, he is liable to those only with whom he has contracted; but if he has committed a breach of duty, he is not protected by setting up a contract in respect of the same matter with another person.' "

Inquiry must then be directed to whether the respondent owed a duty to the appellants separate and apart from its contract to repair. If it owed such duty and failed to perform it, negligence would be committed for which it would be liable, if this proximately caused injury to the appellants. In *Roddy v. Missouri Pacific R. Co.*, 104 Mo. 234, the defendant agreed to furnish to the owner of a stone quarry cars for transportation of stone. Under the contract, it was the duty of the defendant to have the cars equipped with suitable brakes and this it did not do. An employee of the operator of the stone quarry was injured by reason of the brakes on the cars being out of repair and brought an action to recover damages. He was not a party to the contract, and it was held that he could not recover, as the defendant did not owe him a duty which arose apart from the contract. In the course of the opinion it was said:

"The right of a third party to maintain an action for injuries resulting from a breach of a contract be-

tween two contracting parties, has been denied by the overwhelming weight of authority of the state and federal courts of this country and the courts of England. To hold that such actions could be maintained, would not only lead to endless complications, in following out cause and effect, but would restrict and embarrass the right to make contracts by burdening them with obligations and liabilities to others, which parties would not voluntarily assume: *Winterbottom v. Wright,* 10 Mees. & W. 109; *Burdick v. Cheadle,* 26 Ohio St. 393; *Maguire v. Magee,* 13 Atl. Rep. (Penn.) 551; *Necker v. Harvey,* 49 Mich. 518; *Savings Bank v. Ward,* 100 U. S. 195; *Deford v. State,* 30 Md. 195; *Marvin Safe Co. v. Ward,* 46 N. J. L. 19; *Sproul v. Hemmingway,* 14 Pick. 1; *Mann v. Railroad,* 86 Mo. 347; *Lampert v. Gaslight Co.,* 14 Mo. App. 376; *Gordon v. Livingston,* 12 Mo. App. 267.

"The rule is put upon two grounds, either of which is unquestionably sound. One ground is given by the court in the opinion in *Winterbottom v. Wright,* as follows: 'If we were to hold that plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that, there is no reason why we should not go fifty.' The other ground is thus stated in the New Jersey case above cited: 'The object of parties in inserting in their contracts specific undertakings with respect to the work to be done is to create an obligation *inter sese.* These engagements and undertakings must necessarily be subject to modifications and waiver by the contracting parties. If third persons can acquire a right in a contract, in the nature of a duty to have it performed as contracted for, the parties will be deprived of control over their own contracts.'

"Plaintiff, not being a party to the contract, cannot maintain this action on account of injuries resulting from any breach of duty defendant owed Pickle, arising purely out of the terms of the contract between them."

This excerpt from the opinion in that case was quoted with approval in the case of *Ninneman v. Fox,* 43 Wash. 43, 86 Pac. 213. In principle there is no difference between the *Roddy* case and the one now before us.

In the case of *Winterbottom v. Wright,* 10 Mees. & W. 109, 11 L. J. Ex. 415, the defendant had contracted to keep certain mail coaches in repair, and by reason of his failure to do this a third person not a party to the contract was injured. The question there, as here, was whether a duty arose to the plaintiff which was apart and separate from the breach of the contract to repair. We shall take the liberty of quoting in full the opinion of the judges in that case:

"Lord Abinger, C. B. I am clearly of opinion that the defendant is entitled to our judgment. We ought not to permit a doubt to rest upon this subject, for our doing so might be the means of letting in upon us an infinity of actions. This is an action of the first impression, and it has been brought in spite of the precautions which were taken, in the judgment of this court in the case of *Levy v. Langridge,* to obviate any notion that such an action could be maintained. We ought not to attempt to extend the principle of that decision, which, although it has been cited in support of this action, wholly fails as an authority in its favour; for there the gun was bought for the use of the son, the plaintiff in that action, who could not make the bargain himself, but was really and substantially the party contracting. Here the action is brought simply because the defendant was a contractor with a third person; and it is contended that thereupon he became liable to every body who might use the carriage. If there had been any ground for such an action, there certainly would have been some precedent of it; but with the exception of actions against innkeepers, and some few other persons, no case of a similar nature has occurred in practice. That is a strong circumstance, and is of itself a great authority against its maintenance. It is however contended, that this con-

tract being made on behalf of the public by the Post-master-General, no action could be maintained against him, and therefore the plaintiff must have a remedy against the defendant. But that is by no means a necessary consequence — he may be remediless alto-gether. There is no privity of contract between these parties; and if the plaintiff can sue, every passenger, or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties who entered into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue. Where a party becomes responsible to the public, by undertaking a public duty, he is liable, though the injury may have arisen from the negligence of his servant or agent. So, in cases of public nuisances, whether the act was done by the party as a servant, or in any other capacity, you are liable to an action at the suit of any person who suffers. Those, however, are cases where the real ground of the lia-bility is the public duty, or the commission of the public nuisance. There is also a class of cases in which the law permits a contract to be turned into a tort; but unless there has been some public duty undertaken, or public nuisance committed, they are all cases in which an action might have been maintained upon the con-tract. Thus, a carrier may be sued either in assumpsit or case; but there is no instance in which a party, who was not privy to the contract entered into with him, can maintain any such action. The plaintiff in this case could not have brought an action on the contract; if he could have done so, what would have been his situation, supposing the Postmaster-General had released the defendant? that would, at all events, have defeated his claim altogether. By permitting this action, we should be working this injustice, that after the defendant had done everything to the satisfaction of his employer, and after all matters between them had been adjusted, and all accounts settled on the footing of their contract, we should subject them to be ripped open by this action of tort being brought against him.

"Alderson, B. I am of the same opinion. The contract in this case was made with the Postmaster-General alone; and the case is just the same as if he had come to the defendant and ordered a carriage, and handed it at once over to Atkinson. If we were to hold that the plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that, there is no reason why we should not go fifty. The only real argument in favor of the action is, that this is a case of hardship; but that might have been obviated, if the plaintiff had made himself a party to the contract. Then it is urged that it falls within the principle of the case of *Levy v. Langridge*. But the principle of that case was simply this, that the father having bought the gun for the very purpose of being used by the plaintiff, the defendant made representations by which he was induced to use it. There a distinct fraud was committed on the plaintiff; the falsehood of the representation was also alleged to have been within the knowledge of the defendant who made it, and he was properly held liable for the consequences. How are the facts of that case applicable to those of the present? Where is the allegation of misrepresentation or fraud in this declaration? It shows nothing of the kind. Our judgment must therefore be for the defendant.

"Gurney, B., concurred.

"Rolfe, B. The breach of the defendant's duty, stated in this declaration, is his omission to keep the carriage in a safe condition; and when we examine the mode in which that duty is alleged to have arisen, we find a statement that the defendant took upon himself, to wit, under and by virtue of the said contract, the sole and exclusive duty, charge, care, and burden of the repairs, state and condition of the said mail-coach, and, during all the time aforesaid, it had become and was the sole and exclusive duty of the defendant, to wit, under and by virtue of his said contract, to keep and maintain the said mail-coach in a fit, proper, safe, and secure state and condition. The duty, therefore,

is shewn to have arisen solely from the contract; and
the fallacy consists in the use of that word 'duty.' If
a duty to the Postmaster-General be meant, that is
true; but if a duty to the plaintiff be intended (and in
that sense the word is evidently used), there was none.
This is one of those unfortunate cases in which there
certainly has been damnum, but it is damnum absque
injuria; it is, no doubt, a hardship upon the plaintiff
to be without a remedy, but by that consideration we
ought not to be influenced. Hard cases, it has been
frequently observed, are apt to introduce bad law.''

From that case and the case of *Roddy v. Missouri
Pacific R. Co., supra,* which was approved by this court
in *Ninneman v. Fox, supra,* it follows that the appel-
lants in the present case have no cause of action. In
other words, simply the breach by the respondent of
its contract to repair the steering gear of the automo-
bile did not give rise to a duty on its part separate and
distinct from the contract. The reasons why such duty
did not arise are elaborately stated in the excerpts
from the cases above quoted.

The appellants, however, call our attention to what
they call the landlord cases. It is true that, in the case
of the landlord, there is a liability as for tort for injury
resulting from latent or obscure defects known to him
and unknown to the tenant, which arises from a breach
of duty distinct from a mere breach of contract, and
that a guest of the tenant may recover for breach of
the duty, even though not a party to the contract. This
is because there is a general duty on the part of the
landlord to so use his property as not to injure another.
In *Mesher v. Osborne,* 75 Wash. 439, 134 Pac. 1092,
48 L. R. A. (N. S.) 917, it is said:

''The liability of the landlord, as for a tort for injury
resulting from latent or obscure defects, known to him
and unknown to the tenant, arises from a breach of duty
distinct from a mere breach of contract. A mere breach

of contract does not usually create a liability as for negligence. The liability as for negligence must arise either from a breach of some general duty arising as a legal incident to the relation of landlord and tenant created by the contract, or from the negligent performance or negligent failure to perform some general duty imposed upon the landlord by the contract. A mere breach of contract, in the absence of some general duty, gives no basis for an action in tort. *Davis v. Smith,* 26 R. I. 129, 58 Atl. 630, 106 Am. St. 691, 66 L. R. A. 478; *Howard v. Washington Water Power Co., ante,* p. 255, 134 Pac. 927. It does not follow that where there is a breach of contract there can never be a liability in tort, as expressions in some of the earlier cases would seem to imply. Where there is a general duty, even though it arises from the relation created by or from the terms of the contract, and that duty is violated, either by negligent performance or negligent nonperformance, a landlord may be held as for a tort. Between landlord and tenant, as in other relations, there is always the general duty to so use one's own as not to injure another."

The doctrine of the liability of the landlord was extended to an agent in charge of property with sole and absolute control and management thereof and full power to rent, repair and keep the same in safe condition for tenants in *Lough v. John Davis & Co.,* 30 Wash. 204, 70 Pac. 491. The landlord is liable as stated because of a general duty to use his property so as not to injure another, and the agent, as pointed out in the *Lough* case, is liable because of his control over the property. In the present case, the respondent did not own the automobile and was not in control of it at the time the accident occurred. Herein lies the distinction.

In *Wiseblood v. Omaha Merchants' Express & Transfer Co.,* 98 Neb. 757, 154 N. W. 539, the defendant had contracted to move a heavy machine from a factory to a freight depot. While loading the machine at the fac-

tory, an employee thereof was injured, due to a defective appliance furnished by the defendant, and brought an action for damages, and recovery was sustained; but that was on the principle that one who undertakes to furnish appliances for use by others assumes the duty to furnish proper appliances. That was not a case where it was claimed that the duty arose simply and solely on the failure to perform a contract to repair.

Special reliance appears to be placed upon the case of *Foster v. Ford Motor Co.*, 139 Wash. 341, 246 Pac. 945. That was a case where recovery was sought against the manufacturer. When the manufacturer of an article will be liable for defects therein and when not is fully and accurately discussed in the opinion in that case and need not here be repeated. Taking the doctrine there stated, the appellants in the present case say that, if the word "repairer" were substituted for "manufacturer," that case would sustain a recovery in this case. This, however, overlooks the fact that the respondent in the present case is not a repairer. It did nothing upon the automobile. It only agreed to repair and did not do it. Had the respondent undertaken to repair the steering gear and had negligently done the work, a different question would be presented upon which we here express no opinion.

All the other authorities cited by the appellant have been attentively read, but they will not sustain a holding that, simply because a contract to repair a vehicle or appliance is made, a breach of duty arises separate and apart from the contract which will furnish the basis of a cause of action by third parties.

[2] The appellants also object to the taxing of the statutory attorney's fee of fifteen dollars in each case in the superior court as a part of the costs. The cases were consolidated, as stated, for the purpose of trial.

Separate judgments of dismissal were entered. The costs objected to were properly taxed. *Grays Harbor Boom Co. v. McAmmant,* 21 Wash. 465, 58 Pac. 573.

The judgment in each case will be affirmed.

MACKINTOSH, C. J., MITCHELL, FRENCH, and FULLERTON, JJ., concur.