## HUDSON et al. v. MOONIER. *
### No. 10898.

Circuit Court of Appeals, Eighth Circuit.
Feb. 3, 1938.

*Rehearing denied March 8, 1938.

Arnot L. Sheppard, of St. Louis, Mo. (Lon O. Hocker, James C. Jones, Jr., N. L. Beck, of Chicago, Ill., and Jones, Hocker, Gladney & Grand, of St. Louis, Mo., on the brief), for appellants.

Roberts P. Elam, of St. Louis, Mo. (Mark D. Eagleton and Eagleton, Waechter, Yost, Elam & Clark, all of St. Louis, Mo., on the brief), for appellee.

Before STONE, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

Pius Moonier brought this action at law against Floyd Hudson and Curtis M. Fitch to recover damages for personal injuries. The case was tried to a jury. At the close of the evidence, each defendant made a motion for a directed verdict. These motions were denied. The jury returned a verdict for the plaintiff, and from the judgment entered thereon the defendants have appealed. They challenge the sufficiency of the evidence to sustain the verdict and the correctness of certain of the instructions of the court.

The evidence, taking that view of it most favorable to the plaintiff, discloses the facts to be, in substance, as follows:

On October 16, 1933, Fitch leased to A. Guthrie & Co., Inc. (which will be referred to as "Guthrie"), a number of automobile trucks for as long a period as Guthrie should require them for use in constructing a paved highway between Ste. Genevieve and Perryville, Missouri, under a contract between Guthrie and the Missouri State Highway Commission. Guthrie was to pay to Fitch a stipulated rental per truck-operating hour, and Fitch, as lessor of the trucks, agreed that he would "maintain the trucks in good working order and pay all costs of repairs and tires." Guthrie, as lessee, agreed that it would furnish all gasoline, lubricants, and drivers for the trucks at its own expense. The trucks were delivered to Guthrie by Fitch during the latter part of October, 1933. They were thereafter operated by drivers employed by Guthrie. When not in operation, they were kept in a yard at or near Perryville, where they were serviced and repaired by a mechanic named Johnson who was employed by Fitch and whose duty it was to maintain the trucks in good condition and repair. The nature of the work in which the trucks were used required frequent repairs. Shortly after the trucks had arrived upon the work, Guthrie commenced to use them in connection with paving the highway. The defendant Hudson, a truck driver employed by Guthrie, began to drive a three-ton Mack truck, numbered 19, which was one of the trucks covered by the lease. Hudson thereafter continued to operate this truck for some four or five weeks. A few days after the truck was first taken over by Hudson, which was shortly after it had been delivered to Guthrie, Hudson discovered that it had no horn or signaling device upon it, and he so reported to Fitch's employee Johnson. No horn was put upon the truck. This truck was "supposed to be" equipped with a horn. The other trucks were so equipped.

The plaintiff, a laborer in the employ of Guthrie, was on December 4, 1933, working as a "subgrader." The grading work was done by a grading machine. After a grading machine had graded a section of the highway under construction, chalk lines were placed on each side of the section which was to be paved, and these chalk lines indicated where the steel forms for the concrete were to be placed. It was within the 20-foot space between the chalk lines that the trucks operated. The plaintiff's duty was to follow the grading machine and with a shovel level the ground just outside of the chalk lines where it had been left too high or too low by the grading machine, so that the steel forms, the bases

of which extended outwardly from the chalk line, could be properly placed. This necessarily required him to work outside of the chalk line, but in close proximity thereto. While he was at his work on December 4, 1933, stooping over, with his body some twelve inches outside the west chalk line and his head some three or four inches outside, and his back toward the north, he was struck in the head by the extreme right portion of the bumper of the truck being driven by Hudson in a southerly direction, and was severely injured. There were other trucks and tractors being operated within the chalk lines at the time, and there were other men working in close proximity to the plaintiff. Hudson at the time the accident occurred was endeavoring to drive the truck between a tractor and the west chalk line near the point where the plaintiff was working. Hudson saw the plaintiff when within a short distance from him (15 to 40 feet). Hudson thought that the truck which he was driving could pass between the tractor and the west chalk line, but realized that it was a close question. He slowed down, turned toward the west, and went through the motions of sounding the horn to warn the plaintiff of the approach of the truck, but there was no horn. At the time of the impact the truck was moving 10 or 15 miles per hour and was stopped some distance south of the point where it struck the plaintiff. Neither Hudson nor the man who was riding with him in the truck actually saw the accident occur. A laborer working near the plaintiff saw him struck, and testified that the wheel tracks of the truck indicated that its wheels had passed west beyond the chalk line three or four inches. Hudson's testimony was that there was no horn upon the truck and that the foot brake was defective, although by using both foot and emergency brakes "you could get by with them." There was testimony that on the morning after the accident, the brakes on the truck were poor and that it had no horn or at least none that would sound. With good brakes, the truck, at the speed it was going just prior to the accident (15 or 20 miles per hour), could have been stopped in from 30 to 40 feet.

The plaintiff in his second amended complaint charged that the truck which struck him was owned, serviced, and maintained by defendant Fitch and operated by Guthrie with the knowledge and consent of Fitch; that Fitch knew that it would be used upon the construction work where the employees of Guthrie were, and that the operation of the truck was likely to injure such employees if the truck was defective, out of repair, or improperly equipped; that Fitch knew or should have known that the truck was defective and dangerous and was likely to injure the plaintiff and others, in that it was not equipped with a horn or other signalling device, but that Fitch permitted the defendant Hudson to operate the truck in its defective condition, and was therefore negligent, and that Hudson was also negligent in the operation of the truck in its defective condition, and that the combined negligence of the defendants proximately caused the plaintiff's injuries. In their answer the defendants denied that they were negligent, alleged that the plaintiff was guilty of contributory negligence, and asserted that he could not recover from Hudson in any event because the plaintiff had accepted compensation from Guthrie under the Workmen's Compensation Act of Missouri, Mo.St.Ann. § 3299 et seq., p. 8229 et seq., and Hudson was a fellow servant and not a "third person" as defined in the act.

The theory upon which the court submitted the case to the jury is disclosed by the following portions of the court's charge: " * * * and if you further find that both the defendant, Floyd Hudson, and the defendant, Curtis M. Fitch, through his agents and servants, knew that defendant, Fitch's automobile truck was to be, and was in fact, used in the construction work mentioned in evidence, and that said truck would be, and was in fact, driven and operated about said work in places where employees of the Guthrie Construction Company, and particularly the plaintiff, were likely to be, and if you further find that both the defendant, Floyd Hudson, and the defendant, Curtis M. Fitch, through his agents and servants knew, or by the exercise of ordinary care on their parts could have known, that said truck was not equipped with a horn or signaling device which could be used to warn said employees on said work whenever said truck came into close and dangerous proximity to said employees, and that by reason thereof, if you so find, said truck was dangerous and not reasonably safe for operation under the circumstances there, and was likely to cause injury to employees of said Guthrie Construction Company, and particularly the plaintiff, and if you further find that, notwithstanding the aforesaid facts, if you find them to be facts, the said defendant, Curtis

M. Fitch, through his agents and servants, suffered and permitted the defendant, Floyd Hudson, to then and there drive and operate said automobile truck, and the defendant, Floyd Hudson, did then and there drive and operate said automobile truck, as aforesaid, when the defendants, their agents and servants knew, or by the exercise of ordinary care could have known, that said automobile truck was defective and dangerous, as aforesaid, then, in so doing, the defendants were guilty of negligence."

█ We are satisfied that the issues submitted to the jury were all issues of fact if Fitch owed to the plaintiff the duty of maintaining this truck in a reasonably safe condition. If Fitch owed no duty to the plaintiff with respect to the maintenance and repair of the truck, then the judgment cannot stand as to Fitch. It is argued that the failure of Fitch to repair was not in whole or in part the proximate cause of the accident; that the negligence of Fitch and Hudson was not concurrent; and that the plaintiff was guilty of contributory negligence. These questions, in our opinion, were not questions of law for the court and were properly left to the jury.

It is the contention of the defendant Fitch that he owed no duty whatever to the plaintiff to equip this truck with a horn or to keep it in good condition, because no privity existed between them, and the contractual duty which Fitch owed Guthrie would not inure to the plaintiff's benefit. In support of this contention the following cases are cited by Fitch: Roddy v. Missouri Pac. R. Co., 104 Mo. 234, 15 S.W. 1112, 12 L.R.A. 746, 24 Am.St.Rep. 333; Goodlander Mill Co. v. Standard Oil Co., 7 Cir., 63 F. 400, 27 L.R.A. 583; Huset v. J. I. Case Threshing Machine Co., 8 Cir., 120 F. 865, 61 L.R.A. 303; McClaren v. United Shoe Machinery Co., 1 Cir., 166 F. 712; Franceschi v. De Tord, 1 Cir., 71 F. 2d 95, 98, 99; Winterbottom v. Wright, 10 Mees. & W. 119; Attleboro Mfg. Co. v. Frankfort Marine, etc., Ins. Co., 1 Cir., 240 F. 573, 579.

The plaintiff, while he concedes that the defendant Fitch owed him no contractual duty, contends that, since Fitch was the owner of the truck and in control of it for the purpose of maintenance and repair, there was a legal duty imposed by law upon Fitch to use reasonable care in the maintenance and repair of the truck, and that for plaintiff's injuries, resulting from a failure to use such care, Fitch was liable. The cases which the plaintiff cites in support of his contention are those which hold that when the owner of an automobile which is dangerously defective entrusts it to another, the owner will be liable for injuries due to its dangerous condition. Vaughn v. Millington Motor Co., 160 Tenn. 197, 22 S.W.2d 226; Opple v. Ray, 208 Ind. 450, 195 N.E. 81; Trusty v. Patterson, 299 Pa. 469, 149 A. 717; Sears v. Interurban Transportation Co., 14 La.App. 343, 125 So. 748; Saunders System Co. v. Adams, 217 Ala. 621, 117 So. 72, 73, 61 A. L.R. 1333. The difficulty with these cases is that they apply to situations involving the delivery of a car which was dangerously defective at the time it was delivered, and not with a failure to maintain or repair a car which had become dangerously defective after delivery.

█ The evidence in this case would not justify a finding that the truck here involved was without a horn at the time it was delivered; so that, in fairness, it must be assumed that the dangerously defective condition which the jury found to exist came about after delivery, and that the failure of Fitch was a failure to maintain and repair, and not a failure to deliver a truck in safe condition for operation. It could not properly be said that, under the arrangement between Guthrie and Fitch, there was joint control of these trucks or that Guthrie, in effect, redelivered the trucks to Fitch at the end of each day and Fitch turned them back to Guthrie the following morning. It is obvious, however, that the trucks could not operate or repair themselves, and that if they were to be safely used upon the work as contemplated they would have to be both properly operated and properly maintained. Under the arrangement between Guthrie and Fitch, Guthrie undertook to be responsible for their operation and Fitch undertook to be responsible for their maintenance. Necessarily, Fitch retained a measure of control over them sufficient to enable him to carry out his undertaking. Both Guthrie and Fitch knew the nature of the work for which the trucks were being used, and each would necessarily know that a truck which was dangerously defective, if used on that work, would endanger the lives and limbs of Guthrie's employees working on or about these trucks. There would be reason to anticipate that accidents would occur if any truck was not kept in safe operating condition.

There are cases dealing with the question of the liability of a person in such a situation as Fitch for negligence resulting in injuries to third persons not parties to the contract, which indicate that, because of lack of privity and possibly for reasons of public policy, there is no liability to such persons for injuries due to a failure to use care. In Hanson v. Blackwell Motor Co., 1927, 143 Wash. 547, 255 P. 939, 52 A.L.R. 851, it was held that guests in an automobile who were injured because of the failure of the steering gear, could not recover damages from a garage keeper who had undertaken to repair the steering gear for the owner, but had failed to do so. The court based its ruling largely upon the cases of Roddy v. Missouri Pac. R. Co., 1891, 104 Mo. 234, 15 S.W. 1112, 12 L.R.A. 746, 24 Am.St.Rep. 333, and Winterbottom v. Wright, 10 Mees. & W. 109, 152 Eng.Reprint 402. In the Winterbottom Case, which is analogous to this case, the defendant had contracted to keep certain mail coaches in repair, and, by reason of his failure to do so, a third person, not a party to the contract, was injured. The court concluded that the duty to repair arose solely out of the contract and that there was no common-law duty owing by the repairman to the plaintiff. The rule announced in Hanson v. Blackwell Motor Co., supra, also finds support in the case of Earl v. Lubbock, 1905, 1 K.B. 253, 6 B.R.C. 242, 1 Ann.Cas. 753 (noted in 52 A.L.R. 857), in which the driver of a van, who was injured, sued the person who had contracted with the owner of the van to keep it in repair, for negligence in doing the repair work. It was held that the law imposed no duty upon the repairer with respect to the driver of the van. These English cases and others are referred to and discussed by Judge (now Mr. Justice) Cardozo in the case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, pages 696 and 700, Ann.Cas.1916C, 440. The case of Huset v. J. I. Case Threshing Machine Co., 1903, 8 Cir., 120 F. 865, 61 L. R.A. 303, relied upon by defendant Fitch, involved the liability of a manufacturer to an employee of a purchaser of a dangerously defective threshing machine which was known by the manufacturer to be dangerously defective at the time it was delivered. This court held that the general rule was that a contractor, manufacturer, or vendor was not liable to third parties who had no contractual relations with him, for negligence in the construction, manufacture, or sale of the articles he handled—pointing out, however, that an exception to the rule was that one who sold or delivered an article which he knew to be imminently dangerous to life or limb, without notice of its dangerous qualities, would be liable to any person who suffered an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not. The general rule announced in the Huset Case has been narrowed in recent years and its exceptions expanded, particularly with respect to those who manufacture and handle automobiles. This is demonstrated by the case of MacPherson v. Buick Motor Co., above referred to. Judge (now Mr. Justice) Cardozo said in that case (217 N.Y. 382, 111 N.E. 1050, 1053, at page 700 of L.R.A.1916F): "Precedents drawn from the days of travel by stagecoach do not fit the conditions of travel to-day. The principle that the danger must be imminent does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be." It was held that the law does impose upon the manufacturer of an automobile a duty, with respect to third persons, to use care, and in that connection the court said (217 N.Y. 382, 111 N.E. 1050, 1053, at page 699 of L.R.A.1916F): "In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law." After that decision, the Court of Appeals of the Second Circuit, which had previously adhered to the rule as announced by this court in the Huset Case, reversed its ruling and adopted the rule announced by the MacPherson Case. Johnson v. Cadillac Motor Car Co., 2 Cir., 261 F. 878, 8 A.L.R. 1023. See, also, Flies v. Fox Brothers Buick Co., 1928, 196 Wis. 196, 218 N.W. 855, 60 A.L.R. 357, involving the liability of a dealer in secondhand automobiles to a third person for injuries caused by the defective brakes of an automobile which the dealer had reconditioned and sold upon the representation that it was properly equipped.

The rule is now established that a manufacturer owes to the public a duty,

irrespective of contract, to use reasonable care in the manufacture of an automobile and in applying reasonable tests to detect defects and deficiencies therein. Baxter v. Ford Motor Co., 168 Wash. 456, 12 P.2d 409, 15 P.2d 1118, 88 A.L.R. 521; Heckel v. Ford Motor Co., 101 N.J.L. 385, 128 A. 242, 39 A.L.R. 989; Olds Motor Works v. Shaffer, 145 Ky. 616, 140 S.W. 1047, 37 L.R.A.,N.S., 560, Ann.Cas.1913B, 689; 5 Am.Jurisprudence, Automobiles, § 350.

Apparently there are few courts which have considered the question of the duty which is owed to third persons by one who has undertaken to repair a motor vehicle. Aside from Hanson v. Blackwell Motor Co., which we have referred to, the only other recent case we have found which seems to be comparable to this case is Kalinowski v. Truck Equipment Co., 237 App.Div. 472, 261 N.Y.S. 657. In that case the Supreme Court of New York, in considering a motion to dismiss the complaint, reached the conclusion that a truck repair company which had made extensive repairs upon a truck would be liable to a third person, not a party to the contract, who was injured through its negligence in making the repairs. It based its conclusion largely upon the decision in the MacPherson Case.

The American Law Institute, in compiling its Restatement of the Law of Torts, has reached the conclusion that "one who as an independent contractor negligently makes, rebuilds or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels * * *." Section 404, Restatement of the Law of Torts. It defines the liability of a manufacturer as follows (section 395): "A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

■ It seems to us that there is no justification for placing the liability of one who undertakes to maintain a motor vehicle in good condition and repair upon a different basis than the liability of one who undertakes to manufacture a motor vehicle. If a manufacturer owes to the public the duty to use vigilance in order that a car which he produces may not be a menace to those who are likely to come in contact with it, certainly one who, like Fitch, undertakes to maintain a fleet of trucks in good condition and repair, should also be charged with the duty to be careful that none of the trucks may become, through any act or omission of his, a menace to those who, he has reason to believe, will come in contact with it.

■ Our conclusion is that the defendant Fitch was not entitled to a directed verdict, and that the court did not err in submitting to the jury the question whether the injuries of the plaintiff were caused, in whole or in part, by the negligence of Fitch.

■ The contention that the plaintiff can have no judgment against Hudson because Hudson was not a "third person" within the meaning of section 3309, Rev.Stat.Mo. 1929, Workmen's Compensation Act, Mo.St. Ann. § 3309, p. 8244, should not, we think, be sustained. Section 3309 provides:

"Where a third person is liable to the employe or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employe or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employe or dependents, but such employer may recover any amount which such employe or his dependents would have been entitled to recover. Any recovery by the employer against such third person, in excess of the compensation paid by the employer, after deducting the expenses of making such recovery shall be paid forthwith to the employe or to the dependents, and shall be treated as an advance payment by the employer, on account of any future installments of compensation."

■ The courts of Missouri have held that, under the provisions of this section, a cause of action against a third person may be enforced by the injured employee in an action at common law brought against the "third person." General Box Co. v. Missouri Utilities Co., 331 Mo. 845, 55 S.W.2d 442; Reynolds v. Grain Belt Mills Co., 229 Mo.App. 380, 78 S.W.2d 124; Anzer v. Humes-Deal Co., 332 Mo. 432, 58 S.W.2d 962. In Sylcox v. National Lead Co., 225 Mo.App. 543, 38 S.W.2d 497, decided May 5, 1931, the St. Louis Court of Appeals

held that an injured employee could maintain an action against the fellow servant whose negligence caused the injuries, as a "third person." That case has twice been cited by the Supreme Court of Missouri, General Box Co. v. Missouri Utilities Co., supra; Hanson v. Norton, Mo.Sup., 103 S.W.2d 1, 5, although not on this specific question, and has not been overruled.

The ruling of the St. Louis Court of Appeals is not binding on us, since that court is not a court of last resort. Hudson v. Maryland Casualty Co., 8 Cir., 22 F.2d 791. We have no reason, however, to believe that the rule announced in the Sylcox Case is not the rule in Missouri, and we think this court should follow it, particularly in view of the fact that the question is purely one of local law. Compare Trapp v. Metropolitan Life Ins. Co., 8 Cir., 70 F. 2d 976, 978–981.

The criticism of the court's charge, in the light of the exceptions taken by defendants and in view of what we have held to be the applicable law, is without merit.

The judgment is affirmed.