[No. 29013.   Department One.   July 9, 1943.]

JOHN BOCK et al., Appellants, v. TRUCK & TRACTOR, INC., Respondent.[1]

[1]Reported in 139 P. (2d) 706.

*Roy C. Stroud, Cheney & Hutcheson,* and *John Gavin,* for appellants.

*Theodore B. Bruener* and *Neal, Bonneville & Hughes,* for respondent.

STEINERT, J.—This was an action for the recovery of damages for personal injuries. The trial court sustained defendant's demurrer to the complaint, concededly upon the ground that the pleading did not state facts sufficient to constitute a cause of action. Plaintiffs declined to plead further, and the court thereupon entered judgment dismissing the action. From that judgment, plaintiffs appealed.

Since the demurrer admits the truth of all allegations of fact well pleaded in the complaint, such allegations must now be considered as constituting the sole and actual facts in this case. We shall set forth certain portions of the complaint in substance only, but for the sake of accuracy will quote directly those paragraphs, or parts thereof, which contain the essence of the alleged cause of action.

Appellants are husband and wife. Inasmuch as the wife is the particular complainant in this action, we shall hereinafter refer to her as though she were the

sole appellant. Respondent is a corporation engaged in the business of repairing, reconditioning, and selling motor vehicles for use and travel upon the public highways.

On or about November 18, 1940, respondent entered into negotiations with one J. J. LaVergne, with the view of selling to La Vergne a certain "used" automobile truck which respondent then owned. The complaint (which uses the term "defendant" to designate the respondent herein) alleges in paragraph 4:

"That said truck was at such time in the possession and under the control of said defendant, and was orally represented in such negotiations to said LaVergne by said defendant to have been completely and properly overhauled and reconditioned by said defendant, and to be fit for safe and proper operation upon the public streets and highways. That said defendant orally represented to said LaVergne in such negotiations that said truck was overhauled, reconditioned and in safe and proper condition in order to induce the purchase of the same by said LaVergne.

"That defendant further specifically orally represented that said truck carried a 'new truck guarantee', thereby meaning that said truck was in all respects in safe and proper condition for operation upon the public streets and highways."

In consequence of such negotiations and representations, an agreement was effected whereby on November 18, 1940, respondent sold and delivered the truck to LaVergne.

The complaint then continues, in paragraph 5:

"That at the time of the delivery of said truck as aforesaid to said LaVergne, and at all times while same was in the possession of the defendant, and at all times herein mentioned thereafter, said truck was in truth and in fact in a highly defective and dangerous condition and in such condition as to be dangerous to persons and property and a menace upon the public highways, in that the front left spring thereof was cracked and broken to such an extent that ordinary and usual movement of travel upon the public high-

ways would be likely to cause the same to crack completely through and collapse, thereby disarranging the axle and steering assembly on said truck and rendering it incapable of control by the driver thereof. That said defective and dangerous condition was known to said defendant Truck & Tractor, Inc. at the time of the delivery thereof, or should have been known by said defendant if it had but taken any precaution to make a reasonable and proper inspection of said truck, or any inspection at all, before delivering same for use upon the public highways. That at the time of the sale and delivery of said truck, the defendant Truck & Tractor, Inc., a corporation, knew, or in the exercise of reasonable care should have known, of such defective and dangerous condition, and knew that said truck was to be placed in use upon the public highways by said LaVergne, and knew, or in the exercise of reasonable care should have known, that said truck, when placed in operation upon the public highways, due to its said defective condition, would be likely to cause injury to persons operating the same or riding therein, and was incapable of safe use and operation for travel upon the public highways due to its said defective condition."

Paragraph 6 of the complaint alleges:

"That shortly prior to the delivery of said truck by the defendant to said LaVergne, the defendant undertook and attempted to repair and recondition the said truck for resale for use upon the public highway, and the defendant herein, through its duly authorized agents and employees performed labor in repairing and reconditioning said truck, but the defendant, through its said agents and employees, performed the said labor in repairing and reconditioning work, in a negligent manner in that the said defect in the truck hereinabove referred to was not corrected and remedied. That the said defect was such that it should be readily discernible and ascertainable in the exercise of reasonable care by a reasonable inspection of the said truck."

Then follows paragraph 7 of the complaint, which reads:

"That the defendant negligently failed to notify or inform said LaVergne of the said defective and danger-

ous condition of the said truck, and failed to give any notice or warning thereof. That at all times herein mentioned the said LaVergne was wholly ignorant and unaware of the said defective and dangerous condition of the said truck, and had no knowledge thereof, and the defendant at all times knew that the said LaVergne had no knowledge of the defective and dangerous condition of the said truck. That the said LaVergne in purchasing the said truck, relied upon the said representations of the defendant hereinabove referred to, and the defendant knew that said LaVergne relied thereon and knew that said LaVergne did not intend to make any further repairs on said truck before operating the same upon the public highway; and the defendant did not believe and had no reason to believe or expect that the said LaVergne would realize, ascertain, repair or remedy the said defective condition of the said truck."

On December 13, 1940, twenty-five days after the purchase of the truck by LaVergne, his agent and employee was operating it in the usual, ordinary, and customary manner on the streets of the city of Yakima. Appellant, Jane Bock, was at the time a passenger in the truck, upon the invitation and with the consent and permission of LaVergne. In the course of such operation, and owing to the defective and dangerous condition of the truck as described above, the left front spring broke completely through, forcing the spring down upon the front axle, thus jamming the axle and steering assembly and causing the truck to lurch suddenly to the right, out of control of the driver, against an automobile lawfully parked upon the street. In consequence of the impact, appellant was thrown violently in and about the truck and sustained severe injuries. Prior to the time of the collision, neither the driver of the truck nor appellant was aware of its defective and dangerous condition.

Epitomizing the factual content of the complaint as set forth above at length, we reproduce the essential elements as they appear therein in their natural order

and relation: Respondent is a dealer engaged in the business of repairing, reconditioning, and selling secondhand automobiles. It owned a secondhand truck which was in a highly defective and dangerous condition, unfit for use upon the public highways. The particular defect, a cracked and broken spring, was of such character as likely would cause the truck to collapse if it should be used in a normal manner on the highway. The defect was ascertainable by the dealer, however, by the exercise of ordinary care in making a reasonable inspection of the vehicle. The dealer attempted to recondition the truck for sale and use upon the streets and highways, but failed to remedy the defect. For the purpose of effecting a ready sale of the motor vehicle, the dealer thereafter represented to a prospective purchaser that it had been completely overhauled, was in safe condition for use, and carried a so-called "new truck guarantee." The purchaser was ignorant of the defect and bought the truck in reliance upon the dealer's representations. The dealer knew that the purchaser was unaware of the defective and dangerous condition of the chattel but failed to inform him of it. Within a period of twenty-five days after the sale of the truck by the dealer, it collapsed while in normal use. The collapse was the direct result of the cracked and broken spring. In consequence of the unexpected performance of the truck immediately following the collapse of the spring, a passenger in the vehicle was injured. The passenger was not a party to the contract of purchase of the truck and there was no relationship of privity between such third person and the dealer.

The question presented by these facts is whether, under such circumstances, the third person may recover from the dealer damages for personal injuries sustained by reason of the defective condition of the truck.

As stated by counsel, this court has never expressed

itself upon the question whether a secondhand dealer in motor vehicles may be held liable to a third person for injuries sustained by the latter, resulting from a defective condition of a motor vehicle sold by the dealer to a person other than the injured party, under an express warranty of the fitness of the mechanism and under representations that it had been put in good and safe condition, where such defective condition is unknown to the purchaser but was capable of ascertainment by the dealer through the exercise of reasonable care in making inspection of the vehicle.

We have declared, however, that a *manufacturer* of motor vehicles may be held liable, to one purchasing a *new* automobile from the manufacturer's regular dealer, for breach of the manufacturer's warranty concerning the nature of certain equipment upon the vehicle. *Baxter v. Ford Motor Co.,* 168 Wash. 456, 12 P. (2d) 409, 15 P. (2d) 1118, 88 A. L. R. 521; affirmed in the case bearing the same title, reported in 179 Wash. 123, 35 P. (2d) 1090. In that case, the plaintiff brought suit for breach of warranty and for misrepresentations alleged to have been made by the manufacturer, through catalogues and printed matter furnished by the manufacturer to its dealer, to the effect that the windshield of the automobile was made of nonshatterable glass which would not break, fly, nor shatter. The trial court in that case excluded the catalogues and printed matter when offered in evidence by the plaintiff and thereafter, at the conclusion of the plaintiff's testimony, withdrew the cause from the jury and entered judgment for the defendants. On appeal by the plaintiff, the manufacturer contended that the offered evidence was properly held inadmissible because there could be no implied or express warranty without privity of contract and that warranties as to personal property do not attach themselves to, nor run with, the article sold. In its disposition of that contention, this court held that the action could be main-

tained even though there was no privity of contract between the manufacturer and one who purchased the automobile from its dealer, saying:

"The rule in such cases does not rest upon contractual obligations, but rather on the principle that the original act of delivering an article is wrong, when, because of the lack of those qualities which the manufacturer represented it as having, the absence of which could not be readily detected by the consumer, the article is not safe for the purposes for which the consumer would ordinarily use it."

■ The decision in the *Baxter* case, *supra,* was rested largely upon the principles set forth in *Mazetti v. Armour & Co.,* 75 Wash. 622, 135 Pac. 633, Ann. Cas. 1915C, 140, 48 L. R. A. (N.S.) 213. That was an action by a restaurateur against the manufacturer and distributor of meat products, to recover damages for loss of business reputation and profits sustained by the restaurateur by reason of serving to his patrons unwholesome and deleterious food which had been prepared by the manufacturer and later purchased by the restaurateur from a wholesale grocery concern. In that case, this court noted the general rule that a manufacturer is not liable to any person other than his immediate vendee, but pointed out certain exceptions to the rule as follows:

"(1) Where the thing causing the injury is of a noxious or dangerous kind; (2) where the defendant has been guilty of fraud or deceit in passing off the article; (3) where the defendant has been negligent in some respect with reference to the sale or construction of a thing not imminently dangerous."

The case of *MacPherson v. Buick Motor Co.,* 217 N. Y. 382, 111 N. E. 1050, Ann. Cas. 1916C, 440, L. R. A. 1916F, 696, was in many respects similar to the case at bar, although the motor vehicle there involved was a new, not a secondhand, automobile. In an opinion written by Judge Cardozo, the manufacturer was held liable for injuries resulting from the collapse of a de-

fective wheel. We take the liberty of quoting at some length from the opinion:

"The defendant is a manufacturer of automobiles. It sold an automobile to a retail dealer. The retail dealer resold to the plaintiff. While the plaintiff was in the car, it suddenly collapsed. He was thrown out and injured. One of the wheels was made of defective wood, and its spokes crumbled into fragments. The wheel was not made by the defendant; it was bought from another manufacturer. There is evidence, however, that its defects could have been discovered by reasonable inspection, and that inspection was omitted. There is no claim that the defendant knew of the defect and willfully concealed it. . . . The charge is one, not of fraud, but of negligence. The question to be determined is whether the defendant owed a duty of care and vigilance to any one but the immediate purchaser. . . .

"We hold, then, [after a discussion of a number of other cases] that the principle of *Thomas v. Winchester* [6 N. Y. 397, 57 Am. Dec. 455] is not limited to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. . . . There is here no break in the chain of cause and effect. In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law. . . .

"In this view of the defendant's liability there is nothing inconsistent with the theory of liability on which the case was tried. It is true that the court told the jury that 'an automobile is not an inherently dan-

gerous vehicle.' The meaning, however, is made plain by the context. The meaning is that danger is not to be expected when the vehicle is well constructed. The court left it to the jury to say whether the defendant ought to have foreseen that the car, if negligently constructed, would become 'imminently dangerous.' Subtle distinctions are drawn by the defendant between things inherently dangerous and things imminently dangerous, but the case does not turn upon these verbal niceties. If danger was to be expected as reasonably certain, there was a duty of vigilance, and this whether you call the danger inherent or imminent."

Other cases of similar import are: *Johnson v. Cadillac Motor Car Co.*, (C. C. A. 2nd) 261 Fed. 878, 8 A. L. R. 1023; *Goullon v. Ford Motor Co.*, (C. C. A. 6th) 44 F. (2d) 310; *Miles v. Chrysler Corp.*, 238 Ala. 359, 191 So. 245; *Rotche v. Buick Motor Co.*, 358 Ill. 507, 193 N. E. 529; *Olds Motor Works v. Shaffer*, 145 Ky. 616, 140 S. W. 1047, 37 L. R. A. (N.S.) 560; *Payton v. Childers' Electric Co.*, 228 Ky. 44, 14 S. W. (2d) 208; *Heckel v. Ford Motor Co.*, 101 N. J. L. 385, 128 Atl. 242, 39 A. L. R. 989; *Quackenbush v. Ford Motor Co.*, 167 App. Div. 433, 153 N. Y. Supp. 131.

It thus appears to be well established in this state, and elsewhere, that a *manufacturer* may be held liable, not only to his immediate vendee, but also to third persons, for damages resulting from noxious, dangerous, or defective articles of merchandise which are unsafe for the purposes to which they ordinarily would be put by the consumer or user of them, or by the person who expectantly would come in contact with them.

The question with which we are now more particularly concerned is whether, upon a set of facts such as are stated in the complaint herein and admitted by the demurrer to be true, a dealer in used, or second-hand, motor vehicles, may be held liable to a third person for injuries caused by the defective condition of such vehicle. Since that question is one of first impression in this court, we may derive some profit from

a consideration of what other writers have said upon the general subject.

In 5 Am. Jur. 690, Automobiles, § 349, appears a comprehensive text statement of American law upon the "Dealer's liability for injuries from defects in car sold," as follows:

"A dealer in automobiles of standard make is not required to dismantle the automobile to determine whether it is properly built in order to absolve himself from responsibility for damages resulting from defects therein not visible on the usual customary and careful inspection. No liability rests upon a dealer in secondhand automobiles to a person who is injured by the operation of a car sold by him, in the hands of one to whom it is sold, from the mere fact that the car is defective. There must be knowledge of the defect, either actual or constructive.

"The view is taken, however, that the law imputes to the seller of a secondhand automobile such knowledge with respect to its condition as he could have obtained in the exercise of ordinary care. The duty of the seller of a secondhand automobile to exercise care with respect to its equipment so that it may be kept under control and not become a menace to life and limb is the same as that of the manufacturer of a new automobile, especially where the car is represented to be equipped with standard equipment. If the automobile is capable of being made safe, it is, according to this theory, the seller's duty to make it safe.

"According to another view, it is the seller's duty to communicate information as to the defect to the purchaser. Failure to do so may impose liability. Upon giving this information, his duty is discharged unless, from facts known or which he should know, there is a probability that the buyer will use the automobile without remedying the defects. Turning a dangerously defective automobile over to a buyer under such circumstances is equivalent to turning it over to a driver known to be unfit to use it.

"Liability may also be based upon representations, contrary to the facts, that the car is equipped with standard equipment. The failure of the purchaser to inspect it and discover the defective brakes is not an intervening cause of an injury due to such brakes so

as to relieve the seller of liability because of such defect."

See, also, 45 C. J. 887 *et seq.,* Negligence, §§ 326 to 332, inclusive.

The Restatement of the Law of Torts (1934), § 388, deduces from the decisions the following rule:

"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

"(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

Comment (c), under that section, explains that the term "suppliers," as used therein, applies to vendors.

Again, in § 389 of the Restatement, a companion rule is formulated in this language:

"One who supplies directly or through a third person a chattel for another's use knowing that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for bodily harm caused by such use to those whom the supplier should expect to use the chattel or to be in the vicinity of its probable use and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character."

A leading case upon the particular subject, in recent years, is that of *Flies v. Fox Bros. Buick Co.,* 196 Wis. 196, 218 N. W. 855, 60 A. L. R. 357. Respondent con-

cedes that the few decisions which are directly in point here have for the most part followed the principles announced in that case.

The *Flies* case is very similar to this one in point of fact, and its reasoning is so clear and cogent that we are induced to give it special consideration. It appears that one of the defendants therein, Fox Brothers Buick Company, obtained title to an automobile which had been greatly damaged in a wreck. The company repaired or rebuilt the car so as to restore it to a usable condition and then sold it to the defendant Johnson, but at the time of its delivery to him the car was not equipped with efficient brakes. Johnson drove the automobile from the vendor's garage and within a few blocks therefrom approached a standing streetcar which was letting off and taking on passengers. Johnson endeavored to stop the automobile, but was unable to do so because of the inefficiency of the brakes. Due to his lack of control of the machine he ran into the plaintiff, inflicting severe injuries upon her. The trial court dismissed the action as to the defendant company, and the plaintiff appealed.

In the opinion upon appeal, the supreme court of Wisconsin, after disposing of several preliminary contentions made by the defendant company, gave recognition to the general rule of immunity of manufacturers from liability for damages to persons with whom they had no contractual relation, but at the same time the court noted as an exception to the rule those instances wherein were involved products which are inherently or imminently dangerous. The court then traced the development of the law with respect to the exceptions to the rule, and aligned itself with those authorities which hold that one who makes or constructs an instrumentality which is harmless if properly made or contrived, but which is imminently dangerous to life and limb if improperly fabricated, owes to all who are likely to come in contact therewith a

duty to exercise a high degree of care to make such instrumentality safe.

The opinion of the Wisconsin court then proceeds as follows:

"In a note to be found in 42 A. L. R., beginning on p. 1243, at p. 1250 the author submits the following as a sound rule of law, supported by numerous, although not [at the time of the rendition of the opinion, in 1928] the weight of, authorities:

" 'Where, in the exercise of ordinary sense, the seller of an article must know that if it is defective it will be imminently dangerous to persons who he knows will come in contact therewith, a duty rests upon such seller to use ordinary care to ascertain the condition of the article and see that it is safe, especially where, by representations or warranties that the article is safe, he induces the sale; and if he fails to exercise ordinary care to ascertain the safety of the article, and as a result he actually sells it in an imminently dangerous condition, he is liable for personal injuries proximately resulting therefrom, at least, to that class of persons who he knows must come in contact with the article.'

. . .

"Was this automobile such an instrumentality [one imminently dangerous to life and limb because of some defect or of its negligent construction]?   It is generally held that under ordinary circumstances an automobile is not a dangerous instrumentality.   Of course this means an automobile properly built and properly equipped, so that it can be kept under the usual control.   No one would say that a runaway automobile on the street was not dangerous to the lives of the people thereon.   It is just as plain, though perhaps in a less degree, that an automobile lacking equipment necessary to keep it under the control of the driver is also a dangerous instrumentality, not only to the people on the street but to people who may be in the car.  . . .

"In *Huset v. J. I. Case T. M. Co.* 120 Fed. 865, 61 L. R. A. 303, it is said:   'One who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the

parties or not.' [Citing cases.] A requisite of the rule as thus stated is knowledge on the part of the vendor that the article sold is dangerous to life or limb. The jury found that Fox Brothers did not have knowledge of the defective condition of the brakes, but that in the exercise of ordinary care they should have known of their condition. . . . The situation of the Fox Brothers falls squarely within the rule by the author of the note in 42 A. L. R. at p. 1250, heretofore quoted. If that rule be sound law, and we believe it is, it is not necessary to say more. We think, however, that it may properly be said that the duty of the seller of a second-hand automobile with reference to exercising care with respect to its equipment so that it may be kept under control and not become a menace to life and limb, is exactly like that of the manufacturer of a new automobile; and this is especially true where the sale is accompanied with a representation, as the jury found to have been made in this case, that the automobile was equipped with standard equipment. . . . The Fox Brothers were the keepers of a garage. It was a part of their business to repair automobiles and place them in proper condition to operate. It was an easy matter for them to have discovered these defective brakes. Ordinary care required that they know the condition of these brakes, especially in face of the representation that the car was properly equipped. They should have anticipated that some one was likely to be run down upon the streets of the city of LaCrosse in the then condition of the car. The law would show scant consideration for human life if it did not lay this degree of care upon the sellers of this car for the benefit of all who were likely to come in contact therewith."

Had the case at bar arisen in Wisconsin, it undoubtedly would be controlled by the decision in the *Flies* case, *supra.*

In *Jones v. Raney Chevrolet Co.*, 217 N. C. 693, 9 S. E. (2d) 395, the court adopted as a clear, concise statement of the law the following language from the case of *Egan Chevrolet Co. v. Bruner* (C. C. A. 8th) 102 F. (2d) 373, 122 A. L. R. 987:

"A retail dealer who takes a used truck in trade and undertakes to repair and recondition it for resale for use upon the public highways owes a duty to the public to use reasonable care in the making of tests for the purpose of detecting defects which would make the truck a menace to those who might use it or come in contact with it and in making the repairs necessary to render the truck reasonably safe for use upon the public highways, and is charged with knowledge of defects which are patent or discoverable in the exercise of ordinary care."

There are many other cases in which the legal principles above set forth are expressed with a forcefulness equal to that evinced in the foregoing authorities. We do not cite, nor rely upon, such additional cases, however, for the sole reason that the controversies therein arose either directly between the purchaser of a new or used automobile and the *manufacturer* or dealer, or else involved a relationship of bailor and bailee, or that of lessor and lessee, of the motor vehicle. In each of those cases, however, the party who had supplied the dangerous or defective automobile was held liable to the person injured thereby.

It must be conceded that there are some earlier cases which hold contrary to the decisions and texts from which we have previously quoted. The opposing view is rested upon lack of privity or upon the argument that to adjudicate liability in cases not founded upon contractual rights would subject manufacturers and dealers to unreasonable burdens and would create a source of unconscionable litigation. Those cases, however, are not in harmony with the principle now firmly established in this state, that liability of the instant nature does not rest upon a contractual obligation, but upon tort for a wrong committed. *Baxter v. Ford Motor Co., supra.*

Respondent relies strongly upon the case of *Hanson v. Blackwell Motor Co.,* 143 Wash. 547, 255 Pac. 939, 52 A. L. R. 851. The facts in that case briefly were these:

An owner of an automobile took it to a garage to have the steering gear repaired. The defendant, operator of the garage, agreed to make the repair, but failed to do so. The owner of the automobile called for the car that same evening and was told that its steering gear had been repaired as requested. The next morning he started upon a trip, accompanied by two guests. During the trip, the automobile ran off the road because of the defective steering gear, and overturned. The guests were injured and subsequently brought action for the recovery of damages. We held that the garage owner's breach of contract to repair the steering gear did not confer a right of action for damages upon injured third persons who were not parties to the contract, for the reason that the garage owner owed the third persons no duty separate and apart from the contract to repair.

That case is distinguishable from the case at bar in several respects. There, the defendant was not the *vendor* of the automobile, but merely an operator of a garage in which repair work was customarily done upon motor vehicles belonging to other persons. Here, the respondent was the owner of a motor vehicle which he, himself, undertook to overhaul and recondition before selling it to a member of the public, thereby placing himself in a class of persons similar, at least, to a manufacturer. The *Hanson* case was simply one where the garage operator contracted to do a particular thing and failed to do it. In this case, the vendor of a motor vehicle represented and warranted the article sold to be in fit condition for the purposes for which it was to be used, and upon such representations induced the purchaser to buy it. It is apparent from the following excerpt from the opinion in the *Hanson* case that this court was not deciding any question comparable to the one involved here:

"It [the garage operator] did nothing upon the automobile. It only agreed to repair and did not do it. Had the respondent [the garage operator] undertaken to

repair the steering gear *and had negligently done the work, a different question would be presented upon which we here express no opinion."* (Italics ours.)

That case is not controlling upon the facts presented in this case.

In our opinion, it is but a logical extension of the rule announced in the case of *Baxter v. Ford Motor Co., supra,* to hold that a dealer in secondhand motor vehicles who undertakes to overhaul and recondition such vehicles for subsequent sale to the general public has the same duty as has the manufacturer to exercise reasonable care with reference to the equipment of the vehicle and with respect to the ascertainment of its condition, so that it may be kept under control and not become a menace to life and limb; and, further, that such duty rests not upon a contractual obligation, but rather on the principle that the delivery of a motor vehicle lacking in those qualities which the dealer represents it to have, or impregnated with defects which render the vehicle unsafe for its intended use and which defects the dealer could have ascertained by the exercise of reasonable care, constitutes an actionable wrong as to all those who suffer injury therefrom. This would include not only the immediate purchaser of the motor vehicle, but also those who the dealer should expect would use it or would be in the vicinity of its probable use, provided such injured person has not been contributorily negligent. It goes without saying, of course, that the wrong is the more pronounced and reprehensible where the sale of the motor vehicle is accompanied by positive representations by the dealer that the vehicle has been completely overhauled and reconditioned, is fit for safe and proper operation upon the highways, and carries a guaranty of safety and fitness.

The complaint in this action, the allegations of which are admitted by the demurrer, complies strictly with the rules and principles hereinabove set forth and,

consequently, it must be held that the pleading stated a cause of action.

Respondent advances the further argument that even though the dealer in this instance may have been under a duty to the general public to inform the purchaser concerning any defects in the truck, nevertheless the failure to perform such duty did not subject the dealer to any liability, for the reason that any negligence on its part was not a proximate cause of the injuries. This argument is built upon the fact that the injury did not occur until after the lapse of twenty-five days from the date of sale and delivery of the truck to the purchaser.

The complaint alleges positively and emphatically that the injury resulted directly from the collapse of the left front spring of the truck while the vehicle was being operated in a normal, customary manner. There is nothing in the pleading to indicate the contrary. Although the accident did not occur until after the expiration of twenty-five days from the date of purchase, there is nothing to show how far the truck had been driven or to what use it had been put during that period of time. It may be that in some transactions of this nature the period of possession by the purchaser will appear to have been so protracted and its use so extensive that a court could say as a matter of law that proximate causation had not been established. We are not required in this case, however, to determine what such length of time or extent of use is or may be. It is sufficient for us to say here that we cannot declare, as a matter of law, that under the facts presented by the complaint the mere possession by the purchaser for a period of twenty-five days indubitably breaks the chain of cause and effect.

The judgment is reversed, with direction to the trial court to overrule the demurrer.

SIMPSON, C. J., MILLARD, JEFFERS, and GRADY, JJ., concur.